## No. 25800

**The People of the State of Colorado v. Lloyd Earl Hubbard**
(519 P.2d 945)

Decided March 4, 1974.          Rehearing denied March 25, 1974.

244

John P. Moore, Attorney General, John E. Bush, Deputy, David A. Sorenson, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Harold A. Haddon, Deputy, Thomas M. Van Cleave III, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We are called upon in this appeal to provide standards to guide a trial court in deciding whether to grant a hearing to review allegations set forth in successive Crim. P. 35(b) motions for post-conviction relief.

The trial court ruled that the violations of constitutional rights which were alleged in Hubbard's sixth motion for post-conviction relief were part of five previous Crim. P. 35(b) motions and that Hubbard was barred from seeking further relief under Crim. P. 35(b). We affirm for the reasons set forth in this opinion.

On July 18, 1962, an information was filed charging Hubbard with the crime of aggravated robbery. C.R.S. 1953, 40-5-1. The trial court appointed counsel to represent Hubbard. At the arraignment, Hubbard notified the court that he desired to plead guilty. The trial judge made a number of inquiries of both Hubbard and his attorney to determine the voluntariness of the proposed plea of guilty. After being reassured by both Hubbard and his trial counsel that the plea was offered voluntarily, the trial judge advised Hubbard of his constitutional rights, the effect of a guilty plea upon those rights, and the possible consequences of a guilty plea. Hubbard persisted in his desire to plead guilty,

and the trial judge accepted the plea and subsequently sentenced Hubbard to the penitentiary.

Between the time that sentence was imposed and January 9, 1967, Hubbard filed five motions in the trial court seeking post-conviction relief. Four of the post-conviction motions were filed under Crim. P. 35(b) and the fifth was designated as a petition for writ of habeas corpus. The first four motions were denied by the trial court without a hearing. The fifth motion resulted in a full hearing with the defendant present. The evidence presented at the hearing, however, failed to establish that Hubbard was entitled to post-conviction relief, and the trial judge properly denied the fifth motion. On June 15, 1972, Hubbard filed yet another Crim. P. 35(b) motion in the district court alleging errors which were closely related to those set forth in his five prior motions. Hubbard's sixth Crim. P. 35(b) motion was denied, and the trial judge held that the doctrine of *res judicata* was applicable under the facts of this case. Hubbard has appealed the denial of relief and contends that neither the doctrine of *res judicata* nor any other doctrine bars him from repeatedly filing motions for post-conviction relief so long as he asserts a meritorious claim. We do not agree.

Although the doctrine of *res judicata* does not apply to habeas corpus proceedings or motions filed under Crim. P. 35(b), there must, at some point, be an end to the review of criminal convictions. *Murch v. Mottram,* 409 U.S. 41, 93 S.Ct. 71, 34 L.Ed.2d 194 (1972); *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Crim. P. 35(b) provides, in part:

"One who is aggrieved and claiming either a right to be released or to have a judgment of conviction set aside . . . may file a motion at any time in the court which imposed the sentence to vacate, set aside or correct the sentence, or to make such order as necessary to correct a violation of his constitutional rights . . . . The court need not entertain a second motion or successive motions for similar relief based upon the same or similar allegations on behalf of the same prisoner."

Post-conviction relief, under Crim. P. 35(b) is available where a defendant's constitutional rights have been violated during trial. *Baca v. Gobin,* 165 Colo. 593, 441 P.2d 6 (1968). The rule was not intended to establish a procedure which would allow continuing review of issues previously decided against the defendant. *Henson v. People,* 163 Colo. 302, 430 P.2d 475 (1967). Nor does it authorize the defendant to file successive motions based upon the same or similar allegations in the hope that a sympathetic judicial ear may eventually be found. *People ex rel. Wyse v. District Court,* 180 Colo. 88, 503 P.2d 154 (1972).

Although Crim. P. 35(b) is primarily intended to provide a procedure which will permit judicial review of alleged constitutional infirmities in criminal proceedings, it is couched in language which recognizes that there must be some finality in the reviewing process. In this case, Hubbard's piece-meal presentation of issues arising out of occurrences at his trial which might constitute violations of his constitutional rights defeats this second purpose of Crim. P. 35(b). *American Bar Association Standards for Criminal Justice Relating to Post-Conviction Remedies* § 6.2.

At the time Crim. P. 35(b) was adopted to complement the remedies available through a writ of habeas corpus, the constitutional right to counsel had not been thoroughly analyzed or developed by the Supreme Court of the United States. *Compare Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), *with Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). However, during the last decade, the scope of the right to counsel provision of the Sixth Amendment to the United States Constitution has been reviewed on several occasions. *See Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 147, 21 L.Ed.2d 718 (1969); *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Fay v. Noia, supra; Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In two prior decisions, this court has followed the clear mandate of the United States Supreme

Court to grant the right to counsel to an accused at every stage of the proceeding and implicitly recognized that in the absence of a knowing and intelligent waiver, the assistance of counsel is essential in post-conviction proceedings, unless the asserted claim for relief is wholly unfounded. *Haines v. People,* 169 Colo. 136, 454 P.2d 595 (1969); *Kostal v. People,* 167 Colo. 317, 447 P.2d 536 (1968). *See American Bar Association Standards for Criminal Justice Relating to Post-Conviction Remedies* § 4.4.

Much of the Colorado case law which focuses upon successive Crim. P. 35(b) motions, however, developed at a time when there was no right to appointed counsel in post-conviction proceedings. The case law recognizes that as a practical matter, without the assistance of counsel, a convicted defendant would be hard-pressed to assemble into a single Crim. P. 35(b) motion all of the legal arguments which might result in post-conviction relief. In an attempt to alleviate that dilemma, the standards for deciding when successive Crim. P. 35(b) motions should be allowed were left ill-defined, and discretion was placed in the trial judge to allow or disallow successive motions on a case-by-case basis. By placing discretion in the trial judge, the convicted defendant was assured that every distinct and meritorious allegation which he raised would be reviewed.

In extending the Sixth Amendment's right to counsel provision to encompass post-conviction proceedings, it is possible for full review to be accomplished in a single Crim. P. 35(b) proceeding, and no justification exists for condoning successive and often repetitive motions for post-conviction relief. *See* Duties of Public Defender, 1969 Perm. Supp., C.R.S. 1963, 39-21-4. When no claim is made that newly-discovered evidence, or some other meritorious reason exists for further review, the assistance of counsel in post-conviction proceedings makes it possible for the convicted defendant to receive a full review of all issues pertaining to possible violations of his constitutional rights and at the same time provides the criminal justice system with a method to inject the element of finality into criminal proceedings.

In light of the right to counsel in post-conviction proceedings, we now hold that all allegations relating to the violation of a defendant's constitutional rights should be included in a single Crim. P. 35(b) motion. If a second or successive motion is filed, it may be summarily dismissed without a hearing unless the trial judge finds that the failure to include newly-asserted grounds for relief in the first Crim. P. 35(b) motion is excusable. *People v. Scheer,* 184 Colo. 15, 518 P.2d 833. *See Sanders v. United States, supra; Murch v. Mottram, supra; Fay v. Noia, supra; Townsend v. Sain, supra; United States v. Stephens,* 425 F.2d 247 (10th Cir. 1970); *Kinnell v. State,* 210 Kan. 785, 504 P.2d 161 (1972); *State v. Reichel,* 187 Neb. 464, 191 N.W. 2d 826 (1971); *Lee v. State,* 207 Kan. 185, 483 P.2d 482 (1971).

The interpretation of Crim. P. 35(b) which we have adopted has been approved and recommended in principle by the American Bar Association, the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, and the National Advisory Commission on Criminal Justice Standards and Goals. The *American Bar Association Standards Relating to Post-Conviction Remedies* provide, in part:

"2.4 *Statute of limitations; abuse of process; stale claims.*

. . . .

"(b) It should be considered an abuse of process for a person with a tenable or meritorious claim for post-conviction relief deliberately and knowingly to withhold presentation of that claim until an event occurs which he believes prevents successful reprosecution or correction of the vitiating error. An applicant who has committed such an abuse of process may be denied relief on his claim. Courts should not be required to deny relief in all such cases. Abuse of process ought to be an affirmative defense to be specifically pleaded and proved by the state."

"4.4 *Appointment of counsel; withdrawal of appointed counsel.*

"(a) It is most desirable to avoid processing of applications for post-conviction relief beyond the initial screening of the documents without counsel representing the applicant. *Coun-*

*sel should be provided for pro se applicants unable to afford adequate representation . . . ."* [Emphasis added.]

"6.2 *Prior post-conviction proceedings; repetitive applications.*

"(a) In general, the degree of finality appropriately accorded to a prior judgment denying relief in a post-conviction proceeding should be governed by the extent of the litigation upon the earlier application and the relevant factual and legal differences between the present and earlier applications. In particular,

"(i) a judgment dismissing an application, on its face, for want of sufficient allegations should not bar consideration of the merits of a subsequent application that adequately indicates a cognizable claim; and

"(ii) a judgment denying relief, after plenary evidentiary hearing, to an applicant represented by counsel should be binding on questions of fact or of law fully and finally litigated and decided, unless otherwise required in the interest of justice. A question has been fully and finally litigated when the highest state court to which an applicant can appeal as of right has ruled on the merits of the question.

"Finality is an affirmative defense to be pleaded and proved by the state.

"(b) In any case where an applicant raises in a subsequent application a factual or legal contention which he knew of and deliberately and inexcusably

"(i) failed to raise in an earlier application or,

"(ii) having raised the contention in the trial court, failed to pursue the matter on appeal,

a court should deny relief on the ground of an abuse of process. If an application otherwise indicates a claim worthy of further consideration, the application should not be dismissed for abuse of process unless the state has raised the issue in its answer and the applicant has had an opportunity, with assistance of counsel, to reply."[1]

---

[1] The Judicial Conference of the United States, through its Committee on Rules of Practice and Procedure, has promulgated proposed rules

governing habeas corpus and § 2255 proceedings for use in the United States District Courts. Rule 9 of the proposed rules states:

"*Rule 9. Delayed or Successive Petitions*

"(a) Delayed Petitions: A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced by delay in its filing unless the petitioner shows that it is based on grounds of which he had no earlier knowledge and of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred. If the petition is filed more than five years after the imposition of sentence, it shall be presumed that there is prejudice to the state.

"(b) Successive Petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition is not excusable."

*See Committee on Rules and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, Proposed Rules Governing § 2255 Proceedings for the United States District Courts* and *Proposed Amendments to the Federal Rules of Appellate Procedure,* 73-83, 116-122 (January 1973).

The National Advisory Commission on Criminal Justice Standards and Goals has adopted an even stronger view. The Standards which they have adopted recommend:

"Standard 6.5

"Exceptional Circumstances Justifying Further Review.

"After a reviewing court has affirmed a trial court conviction and sentence, or after expiration of a fair opportunity for a defendant to obtain review with the aid of counsel, the conviction and the sentence generally should be final and not subject to further judicial review in any court, State or Federal. Further review should be available only in the following limited circumstances:

. . . .

"2. The defendant asserts a claim of newly discovered evidence, which was not known to him and which could not have been discovered through the exercise of due diligence prior to conclusion of the unified review proceeding or the expiration of the time for seeking review, and which in light of all the evidence raises substantial doubt as to defendant's guilt; or . . . ."

*National Advisory Commission on Criminal Justice Standards and Goals, Courts,* 6.5 (1973).

*Developments in the Law — Federal Habeas Corpus,* 83 Harv. L. Rev. 1038 (1970); *R. Sokol, A Handbook of Federal Habeas Corpus* (1965); Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U. Chi. L. Rev. 142 (1970).

The interpretation of the rule which we adopt today reflects the philosophy that if a prisoner deliberately withholds one of two grounds for post-conviction relief at the time of filing his first application, he may be deemed to have his right to a hearing on the second ground in subsequent applications. The interpretation given to Crim. P. 35(b) in this case requires that the trial judge find that the petitioner's failure to assert the new grounds in the prior motion be inexcusable before the motion is denied on the grounds of waiver. This interpretation of Crim. P. 35(b) is not intended to eliminate any judicial determination on the merits of a prisoner's claims, but rather is to insure that all claims are considered in one proceeding.

In all of Hubbard's motions for post-conviction relief, the voluntariness of his plea was attacked. However, the underlying grounds alleged for attacking the voluntariness of the plea in Hubbard's five previous motions stemmed from promises of lenient treatment and threats by police officers. In this Crim. P. 35(b) proceeding, however, Hubbard alleged that his plea was involuntary because he did not know the elements of the crime to which he plead guilty. The trial court, in addition to ruling on the five prior motions as a bar to this proceeding, reached the merits of Hubbard's claim and denied relief.

Whether Hubbard's plea in this case was knowingly and voluntarily made depends upon the law surrounding Crim. P. 11 as it existed in 1962. It is undeniably true that a plea of guilty is just as involuntary when not knowingly and intelligently made as it is when physically or psychologically coerced. *Smith v. O'Grady*, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1955): *D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial* (1966). However, prior to 1969 and the United States Supreme Court's decision in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), there was no affirmative duty placed upon the trial judge to inform the defendant of the specific elements of the crime.[2] *People v. Canino,* 181 Colo. 207, 508

---

[2] *Boykin v. Alabama, supra,* is not retroactive. *People v. Alvarez,* 181 Colo. 213, 508 P.2d 1267 (1973); *Ward v. People, supra.*

P.2d 1273 (1973); *Ward v. People,* 172 Colo. 244, 472 P.2d 673 (1970). Rather, the trial judge's duty was satisfied if he found from the evidence presented that the defendant understood the nature of the charge. *Ward v. People, supra; Martinez v. People,* 166 Colo. 132, 442 P.2d 422 (1968); *Lucero v. People,* 164 Colo. 247, 434 P.2d 128 (1967). At Hubbard's 1962 trial in which he entered his plea of guilty, the trial judge asked Hubbard's trial counsel if the defendant had a copy of the information, and the defense counsel responded, "I have withdrawn a copy in behalf of the defendant, and we have gone over it, your honor." The information was drafted in substantially the same language of C.R.S. 1953, 40-5-1. The statutory language of C.R.S. 1953, 40-5-1 is clear and easily understandable to a person of ordinary intelligence who has no legal training. In our view, the fact that Hubbard and his defense counsel had "gone over" the information together tends to indicate that Hubbard was aware of and understood the nature of the crime of robbery. *See People v. Lottie,* 183 Colo. 308, 516 P.2d 430 (1973) (a similar fact situation after *Boykin v. Alabama, supra,* was announced). Moreover, the probation report which served as a presentencing investigation report stated that during the probation interview, Hubbard freely admitted that he took money from the victim named in the information with a loaded gun. These two facts — the going over of the information, plus Hubbard's admission during the probation investigation — are sufficient to establish that Hubbard understood the nature of the charge against him. Therefore, the record satisfactorily establishes that Hubbard is not entitled to relief and that the trial court did not err in denying Hubbard's sixth Crim. P. 35(b) motion without a hearing.

Accordingly, we affirm.

MR. JUSTICE KELLY does not participate.