635 P.2d 955

Francis C. PALMER,
Petitioner-Appellant,

v.

Ed DERMITT, Warden, and State of
Idaho, Respondents.

No. 13503.

Supreme Court of Idaho.

Oct. 15, 1981.

Alan E. Trimming, Boise, for petitioner-appellant.

David H. Leroy, Atty. Gen., Robert R. Gates, Deputy Atty. Gen., Boise, for respondents.

McFADDEN, Justice.

Defendant, Francis Palmer, was convicted of first degree burglary on July 19, 1976, and sentenced to a term of imprisonment not to exceed fourteen years. This court affirmed his conviction in *State v. Palmer*, 98 Idaho 845, 574 P.2d 533 (1978), (hereinafter *Palmer I*), holding that the prosecutor's use of the defendant's prior felony conviction for impeaching what the defendant testified he was doing at the scene of

the crime went to the credibility of the defendant's testimony, and therefore was a permissible use of the defendant's felony record.

Palmer then filed a *pro se* petition under the Uniform Post-Conviction Procedure Act. I.C. § 19–4901 *et seq.* The petitioner thereafter filed an amendment to the petition for post-conviction relief. The petition and amendment raised the following issues: (1) the propriety of the prosecutor's use of the defendant's prior felony conviction to impeach his testimony; (2) the constitutionality of the felony impeachment rule as embodied in I.R.C.P. 43(b)(6); (3) whether the testimony of one of the two investigating police officers was perjured; (4) whether the other investigating police officer manufactured evidence in an attempt to incriminate the defendant; (5) whether evidence allegedly in the defendant's favor was knowingly suppressed by the prosecutor or not presented to the court at trial; and (6) the effectiveness of his counsel at trial and on appeal in allegedly failing to raise these issues. Thereafter, the district court appointed counsel pursuant to Palmer's request. The court-appointed counsel, apparently without consulting Palmer, then filed an amended petition for post-conviction relief.[1] The amended petition omitted all of the issues raised in the *pro se* petition and amendment thereto with the exception of the issues concerning the felony-impeachment rule. Pursuant to the State's motion, the district court dismissed the petition on the ground that the issue of prosecutorial use of a defendant's prior felony record for impeachment purposes had been addressed in *Palmer I*. On appeal, this court affirmed the dismissal of the petition for postconviction relief. *Palmer v. State*, 101 Idaho 379, 613 P.2d 936 (1980) (hereinafter *Palmer II*).

During the pendency of the appeal in *Palmer II*, Palmer filed a *pro se* petition for issuance of a writ of habeas corpus. The

1. At the time the court-appointed counsel amended the petition, the defendant was in the custody of Nevada authorities to face outstanding charges against him in that jurisdiction. Thereafter, the defendant was returned to Idaho to complete his term of imprisonment in this state.

petition reasserted those issues originally presented in the defendant's *pro se* petition and amendment thereto for postconviction relief, with one exception. The exception being the issue of whether evidence allegedly in the defendant's favor was knowingly suppressed by the prosecutor or not presented to the court at trial. Instead, the petition for issuance of a writ of habeas corpus raises the new issue of whether the evidence was sufficient to support his conviction.[2] Additionally, the defendant alleged that the court-appointed attorney in the post-conviction relief proceeding acted without authority in amending his *pro se* petition in that action, and that during those proceedings he had been fraudulently transferred to the custody of Nevada authorities and fraudulently returned to the custody of Idaho authorities under the Interstate Agreement on Detainers (I.C. § 19–5001 *et seq.*) The district court dismissed the petition for the issuance of a writ of habeas corpus, presumably on the ground that it need not entertain successive petitions to vacate, set aside, or correct a sentence.

Palmer brings the instant appeal, contending that under the particular facts of this case the doctrine of waiver does not bar him from asserting grounds for relief in his petition for issuance of a writ of habeas corpus which were not raised in the prior postconviction relief proceeding. We agree.

At the outset it is observed that in the case of *Dionne v. State*, 93 Idaho 235, 237, 459 P.2d 1017 (1969), this court held that "[i]t is immaterial whether a petition or application is labeled Habeas Corpus or Post Conviction proceeding. Substance not form governs." In the instant case the petition for issuance of a writ of habeas corpus in effect claims substantial denial of those rights of the defendant protected by the federal constitution and the Idaho constitution, grounds covered by the Uniform Post Conviction Procedure Act.[3] I.C. § 19–

4901(a)(1). Accordingly, for purposes of this appeal, the petition for a writ of habeas corpus shall be treated in effect as if it were denominated a request for postconviction relief.

I.C. § 19–4908 provides that "All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application."

The intent of this language is clear: all allegations relating to a request for postconviction relief should be asserted in one petition. However, the language of I.C. § 19–4908 does not prohibit successive petitions for postconviction relief in every case, but rather, only prohibits successive petitions in those cases where the petitioner "knowingly, voluntarily and intelligently" waived the grounds for which he now seeks relief, or offers no "sufficient reason" for the omission of those grounds in his "original, supplemental or amended petition." Thus, it is necessary that the trial court find the failure to include newly asserted grounds for relief in the prior postconviction relief proceeding was without sufficient reason before the application may be summarily dismissed on the ground of waiver. Other jurisdictions have also arrived at the same interpretation with respect to similar statutory provisions relating to successive petitions for postconviction relief and the doctrine of waiver. *See, e. g., People v. Hubbard*, 184 Colo. 243, 519 P.2d 945 (1974); *Rogers v. Warden, Nevada State Prison*, 86

---

**2.** Petitioner contends that this issue was raised in his *pro se* petition and amendment thereto for postconviction relief. The contention is without factual support.

**3.** However, *see* discussion, *infra* pp. 960–961, relating to Palmer's allegations concerning his transfer to Nevada authorities under the Interstate Agreement on Detainers.

Nev. 359, 468 P.2d 993 (1970), *cert. denied*, 400 U.S. 846, 91 S.Ct. 92, 27 L.Ed.2d 83.

Consonant with the foregoing are the American Bar Association Standards Relating to Post-Conviction Remedies, which provide with respect to waiver in standard 6.1 that:

"(a) Unless otherwise required in the interest of justice, any grounds for post-conviction relief as set forth in section 2.1 which have been fully and finally litigated in the proceedings leading to the judgment of conviction should not be re-litigated in post-conviction proceedings.

(i) It is essential that accurate and complete records of proceedings leading to such judgments be compiled and retained in accessible form.

(ii) A question has been fully and finally litigated when the highest court of the state to which a defendant can appeal as of right has ruled on the merits of the question.

Finality is an affirmative defense to be pleaded and proved by the state.

(b) Claims advanced in post-conviction applications should be decided on their merits, even though they might have been, but were not, fully and finally litigated in the proceedings leading to judgments of conviction.

(c) Where an applicant raises in a post-conviction proceeding a factual or legal contention which he knew of and which he deliberately and inexcusably

(i) failed to raise in the proceeding leading to judgment of conviction, or

(ii) having raised the contention in the trial court, failed to pursue the matter on appeal,

a court should deny relief on the ground of an abuse of process. If an application otherwise indicates a claim worthy of further consideration, the application should not be dismissed for abuse of process unless the state has raised the issue in its answer and the applicant has had an opportunity, with the assistance of counsel, to reply.

(d) Because of the special importance of rights subject to vindication in post-conviction proceedings, courts should be reluctant to deny relief to meritorious claims on procedural grounds. In most instances of unmeritorious claims, the litigation will be simplified and expedited if the court reaches the underlying merits despite possible procedural flaws."

The commentary to standard 6.1 sets forth a particularly well reasoned analysis of the doctrine of waiver, an analysis which we find persuasive.

"A most difficult concept to control in any context is that of waiver; this is no less true in post-conviction remedies. The term is subject to multiple meanings or shades of meanings which can result in confusion in communication and, perhaps, in thought. One usage employs waiver as expressive of a rule of finality of judgments: issues that were not presented at a specified time or in a specified way are said to have been waived. This appears in some post-conviction statutes. [Citations omitted.] A wholly different waiver is implied in the familiar principle that a party to a criminal action can intelligently and understandingly forego certain rights, and that his choice will be binding upon him. This suggests an active, knowing choice, in advance of the occasion when the waived right might have been useful, affirmatively expressed in the appropriate forum. The polarities of these two types of 'waiver' are clearly dissimilar, but different combinations of facts can produce blends that are not clearly the waiver-foreclosure-by-judgment or the waiver-voluntary-relinquishment.

Essential to the difference between these two types of waiver is that one, the finality rule, is an attribute of the procedural law of judgments, while the other, the voluntary relinquishment rule, is a corollary of the law creating the underlying right. The distinction between these is clearly visible when a federal constitutional right is considered in the context of a state post-conviction proceeding: what constitutes a waiver-voluntary-relinquishment is a question of federal constitution-

al law; the question of the scope of a prior judgment is a question of state procedural law. If the state court denies relief on the grounds that the applicant intelligently and understandingly waived the right in question, it has rendered a decision on a question of federal constitutional law. On the other hand, if the state court denies relief on the ground that the applicant should have raised the question at some earlier proceeding, it has rendered a decision on a question purely of state law. Where it is found that an applicant has relinquished a right, the decision is tantamount to holding that the right was never violated. The decision, thus, is directly on the merits. Where the foreclosure by judgment rule is applied, the court refuses to reach the merits of the asserted denial of the constitutional right.

As used in this report, 'waiver' refers to voluntary relinquishment rather than foreclosure by judgment. [Citation omitted.]

Even the first post-conviction proceeding is an effort to reopen a judgment, giving possible occasion for the same abuses believed by some to occur in repetitive application situations. A defendant at his trial might deliberately fail to raise a defense which he intends later to use as a post-conviction claim, just as a post-conviction applicant could intentionally raise only one of several claims in his first application. Having raised such a defense, the defendant may deliberately determine not to pursue appellate review of an adverse judgment. Where deliberate efforts to cause piecemeal litigation are established, there is an abuse of process that courts need not tolerate. [Citation omitted.] Abuse of process should always be an affirmative defense, pleaded and proved by the state, and cautiously invoked."

With the foregoing interpretation of I.C. § 19–4908 and analysis of the doctrine of waiver as it applies in postconviction relief proceedings in mind, we now turn to the various allegations contained in Palmer's petition for issuance of a writ of habeas corpus [postconviction proceeding] to determine whether he is barred at this time from asserting any or all of the allegations raised therein.

■ In the instant petition, Palmer again raises several allegations concerning the felony impeachment rule. At oral argument Palmer's new court-appointed attorney conceded that these allegations have already been raised and adjudicated in both *Palmer I* and *Palmer II*, and therefore have become the law of the case. *See, e. g., Otten v. Stonewall Ins. Co.*, 538 F.2d 210 (8th Cir. 1976). Consonant with the view that the principles of finality of judgments apply most strongly on questions that have been adjudicated, we hold that Palmer may not reassert allegations concerning the felony impeachment rule in this action. Postconviction relief exists to try fundamental issues which have not been tried before.

■ Palmer also alleges that the evidence was insufficient to support his conviction. This allegation was neither raised in Palmer's *pro se* petition and amendment thereto for postconviction relief nor in the subsequent amended petition for postconviction relief filed by his court-appointed counsel in that proceeding. Palmer asserts no excuse or reason why this issue was not pursued on direct appeal from his conviction or in the prior postconviction proceeding. By failing to present the issue in the earlier proceedings, without excuse, the petitioner has committed an abuse of process that the courts of this state need not tolerate. *See Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

■ Palmer asserts that the reason he failed to raise the issues concerning the alleged perjured testimony and manufactured evidence as well as the alleged ineffectiveness of his counsel at trial and on direct appeal in the prior postconviction proceeding is because of the ineffective assistance of his prior postconviction counsel. Specifically, these allegations were originally presented in Palmer's *pro se* petition and amendment thereto for postconviction relief, but were allegedly then omitted by

Palmer's court-appointed attorney without the knowledge or consent of Palmer. The allegations of ineffective assistance of prior postconviction counsel, if true, would warrant a finding that the omission in the prior postconviction proceeding of the allegations now being raised anew by Palmer was not a result of an active, knowing choice made by Palmer through this prior court-appointed attorney, and would therefore provide sufficient reason for permitting the newly asserted allegations to be raised in the instant petition. Other jurisdictions have similarly held that a claim of ineffective assistance of appellate counsel or prior postconviction counsel provides sufficient reason to permit newly asserted allegations to be raised in a subsequent postconviction proceeding. *See Sims v. State*, 295 N.W.2d 420 (Iowa 1980); *Curtis v. State*, 37 Md.App. 459, 381 A.2d 1166 (1978) *rev'd on other grounds; Stewart v. Warden, Nevada State Prison*, 92 Nev. 588, 555 P.2d 218 (1976). Since the record discloses no contravention by the State through affidavit or otherwise of these newly asserted allegations, since our conclusion that Palmer is not barred from raising these allegations, the district court erred in summarily dismissing Palmer's petition for issuance of a writ of habeas corpus [postconviction relief] without first providing him an evidentiary hearing going to the merits of these allegations. *See, State v. Cobb*, 100 Idaho 116, 594 P.2d 154 (1979); *King v. State*, 93 Idaho 87, 456 P.2d 254 (1969); *Tramel v. State*, 92 Idaho 643, 448 P.2d 649 (1968).

Finally, we consider Palmer's allegation that he was transferred to the custody of Nevada authorities for prosecution under fraudulent detainer documents in violation of the Interstate Agreement on Detainers, and his assertion that as a result of the alleged violation the State of Idaho has lost jurisdiction over him. In connection with this allegation, Palmer also contends that the State of Nevada lost jurisdiction over him when they returned him to this state under the same fraudulent detainer documents. The allegations, even if true, simply are not cognizable in a proceeding of this nature.

I.C. § 19–4901(a) states that a prisoner serving a sentence in this state may seek postconviction relief in six situations—when the claimed error is:

"(1) that the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of this state;

(2) that the court was without jurisdiction to impose sentence;

(3) that the sentence exceeds the maximum authorized by law;

(4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

(5) that his sentence has expired, his probation, or conditional release was unlawfully revoked by the court in which he was convicted, or that he is otherwise unlawfully held in custody or other restraint; or

(6) that the conviction or sentence is otherwise subject to collateral attack upon any ground or alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy; may institute, without paying a filing fee, a proceeding under this act to secure relief."

None of these requirements are satisfied when the ground for postconviction relief is transgressions in violation of the Interstate Agreement on Detainers. *Accord Edwards v. United States*, 564 F.2d 652 (2d Cir. 1977) (*per curiam*); *United States v. Scallion*, 548 F.2d 1168 (5th Cir. 1977); *Enright v. United States*, 434 F.Supp. 1056 (S.D.N.Y.1977). The alleged violations of the Agreement in no wise bear either directly or indirectly upon Palmer's conviction in this state of first degree burglary, or his sentence of imprisonment not to exceed fourteen years. The allegations of Palmer in this regard are simply not within the scope of the Uniform Post-Conviction Procedure Act. Moreover, although the allegations attacking the detainer's effects ordinarily would be cognizable in a habeas corpus proceeding, as this case was originally denominated, we note

that the time for doing so has passed. To attack the detainer's effects, Palmer should have filed a habeas corpus petition in this state prior to the time of his transfer. To challenge the validity of the charge pending against him in Nevada, he should have filed a petition for issuance of a writ of habeas corpus in Nevada upon his being placed in the temporary custody of the officials of that state. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Nelson v. George*, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970); *Campbell v. Commonwealth of Virginia*, 453 F.2d 1230 (10th Cir. 1972); *Baity v. Ciccone*, 379 F.Supp. 552 (W.D.Mo.1974). *See generally*, Note, "The Interstate Agreement on Detainers: Defining the Federal Role," 31 Vand.L.Rev. 1017 (1978).

Accordingly, the order of dismissal is reversed and the cause is remanded for further proceedings in accordance with the views expressed in this opinion.

BAKES, C. J., and BISTLINE and DONALDSON, JJ., concur.

SHEPARD, J., without opinion, dissents from the reversal.

BISTLINE, Justice, specially concurring.

Counsel who represented Kraft in *Kraft II*[1] and *Kraft III*,[2] while left wondering why the *Kraft* cases go unmentioned in our opinion released today, will be gratified that the entire Court has now turned to the American Bar Association Standards Relating to Post-Conviction Remedies for guidance in the troublesome area of repetitive post-conviction or habeas corpus petitions.

In *Kraft II* the concurring opinion of Bistline, J., after pointing out the view of Justice Bakes espoused in *Kraft I* that competence of counsel "should not have been considered and decided by this Court on an incomplete record," 99 Idaho at 218, 579 P.2d at 1201, continued on to espouse the view that the Court should pass on the *res judicata* question, and that the American Bar Standards should be utilized. That point of view did not command the Court, nor did the Court acknowledge it in any manner.

Nevertheless, in *Kraft III*, which came up on the expedited calendar arrangement, with Justice McFadden and Justice Bistline not sitting, a unanimous Court including Justice Bakes ruled that Kraft's petition for relief was barred by the civil doctrine of *res judicata*, the court drawing support for its application of the finality doctrine from Idaho's version of the Uniform Post-Conviction Relief Act. 100 Idaho at 673–74, 603 P.2d at 1007–08.

In *Kraft III* the Court, although its quote from I.C. § 19–4908 included the exception from the waiver provisions where "the Court finds a ground for relief which for sufficient reason was not asserted or was inadequately raised in the original ... application," failed to observe that Justice Bakes in *Kraft I* had well explained that competence of counsel could not have been adequately raised in the absence of an evidentiary hearing. Sorrier than that state of affairs the *Kraft III* Court was apparently totally unaware of the opinion of Bistline, J., in *Kraft II*, which opinion dealt fully with the American Bar Association Standards Relating to Post-Conviction Remedies § 6.1, and the accompanying commentary, all set forth at 99 Idaho 220, 579 P.2d 1203—which seemed to demonstrate that Kraft would not be precluded from pursuing his claim for post-conviction relief because of counsel's having inadequately raised it on direct appeal without an evidentiary record.

Although the *Kraft III* Court seemed to believe itself gathering some support for the *res judicata* stance there taken from a statement quoted therein which was made by Bistline, J., in the *Ruth* case,[3] the signifi-

---

1. *Kraft v. State*, 99 Idaho 214, 579 P.2d 1197 (1978).

2. *Kraft v. State*, 100 Idaho 671, 603 P.2d 1005 (1979). *Kraft I* is found in *State v. Kraft*, 96 Idaho 901, 539 P.2d 254 (1975).

3. *State v. Ruth*, 98 Idaho 879, 574 P.2d 1357 (1978).

598

cant portion in that concurring opinion was this: "In this case nothing has been presented to this Court even tending to raise a factual issue as to the competence of trial counsel. For my part, I consider it so improvidently raised, that it would be better to consider it as not having been raised at all." *Id.* at 881, 574 P.2d at 1359.

Finally, mention should be made of the *Blackburn* case,[4] where Bistline, J., again suggested that counsel are entitled to a holding from this Court on the *res judicata* effect of raising (prematurely on an inadequate record) incompetence of counsel, and at the same time recommended "the adoption of a procedure [for abating the direct appeal while an evidentiary hearing was had in post-conviction proceedings] as mentioned in [*Kraft II*]." 99 Idaho at 223, 579 P.2d at 1206.

The Court's analysis and guidance at least in one of those two areas finally comes with today's opinion. Unfortunately *Kraft III* intervened ahead of today's pronouncements, and more unfortunately the Court does not deign to mention the *Kraft* cases, or explain how *Kraft III* squares with our holding today. In such a casual manner the science of jurisprudence is not much advanced, assuming, as appears to be the case, that *Kraft III* is incompatible with that which we now declare to be the proper approach in dealing with repetitive petitions for post-conviction relief.

Today's opinion is, of course, compatible with the opinion of Bistline, J., in *Kraft II*, adoption of which at that time would have been of value to the trial court in Palmer's case and might have precluded this appeal and another district court hearing—and the possibility of a *Palmer IV* in this Court.

4. *State v. Blackburn*, 99 Idaho 222, 579 P.2d 1205 (1978).