IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 41056

| | | |
|---|---|---|
| CHRISTOPHER CONLEY TAPP, | ) | 2014 Unpublished Opinion No. 691 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: August 22, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Joel E. Tingey, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Dennis Benjamin of Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.
_____

MELANSON, Judge

Christopher C. Tapp appeals from the district court's summary dismissal of his successive petition for post-conviction relief. For the reasons set forth below, we affirm.

I.

FACTS AND PROCEDURE

This Court summarized the facts of this case in *State v. Tapp*, 136 Idaho 354, 33 P.3d 828 (Ct. App. 2001) as follows:

Early in the morning of June 13, 1996, Angie Dodge was raped and stabbed to death in her apartment in Idaho Falls. On January 7, 1997, twenty-year-old Christopher Tapp voluntarily submitted to police questioning about this crime at the Law Enforcement Building (LEB) in Idaho Falls. Tapp again voluntarily went to the LEB for questioning on January 10. After this interview, Tapp's parents retained private counsel for their son. When Tapp did not appear at the LEB for another scheduled interview on January 11, police officers went to his home to find him. They were informed by Tapp's mother that an attorney had been retained and that Tapp would appear on January 13, with counsel, to answer

more questions. Approximately an hour later, the Idaho Falls chief of police arrived at the Tapp home and attempted to convince Tapp's mother to change her mind about her son's refusal to be interviewed without assistance of counsel. She refused. Rather than waiting for a voluntary interview on January 13, law enforcement officials obtained a warrant to arrest Tapp on a charge of accessory to a felony, Idaho Code §§ 18-205, -206, and he was arrested on January 11.

After making the arrest, an officer put Tapp in an interview room and called Tapp's attorney. Before the attorney's arrival, the officer initiated a discussion with Tapp about the type of information the police wanted to obtain from him.[1] On January 13, another attorney joined in Tapp's representation as co-counsel. Thereafter, Tapp was interviewed, while under arrest and in police custody, on January 15 and 17. During all interviews at the LEB from January 15 forward, Tapp was separated from his attorneys. The attorneys were placed in a nearby office in the LEB where they were allowed to observe the interviews on a closed-circuit television. Tapp's only contact with his attorneys was during breaks in the interviews. His attorneys apparently made no objection to this arrangement.

In the first few interviews Tapp denied having any knowledge of the crime, then claimed that Ben Hobbs had confessed to killing Dodge and had asked Tapp to help him with an alibi. Tapp denied having ever been at the crime scene. By January 15 and 17, however, Tapp's story was changing, and he admitted that he had accompanied Hobbs to Dodge's apartment on the night of the murder. Tapp told police that Hobbs wanted to confront Dodge because Hobbs believed that she had convinced Hobbs's wife to leave him. Tapp claimed that Hobbs and Dodge started fighting and that Hobbs punched Dodge and then stabbed her twice. Tapp asserted that he ran from the apartment at that point. He admitted that he returned later and found Dodge dead and no one else present. Tapp also implicated a man named Jeremy Sargis in the crime. Tapp said he believed that the murder weapon belonged to Sargis, but he initially claimed that Sargis was not in the apartment that night. Eventually, however, Tapp accused Sargis of helping to rape and murder Dodge.

On January 15, Tapp and the State entered into a "limited use immunity" agreement, and on January 17 they entered into a "cooperation and settlement agreement." These agreements (hereinafter referred to collectively as the "immunity agreements") required Tapp to cooperate with the police investigation of Dodge's death and to provide the police with truthful information about the crime. Tapp also agreed to plead guilty to aiding and abetting an aggravated battery, a felony, I.C. §§ 18-903, -907, and the State agreed not to file any other charge against Tapp related to Dodge's death. The State also promised to recommend at the sentencing hearing that the district court retain jurisdiction for a limited period pursuant to I.C. § 19-2601(4), and to allow withdrawal of the guilty plea if the judge did not follow the recommendation. The State also agreed not to use any of Tapp's statements against him except for impeachment purposes. As a

---

[1] Tapp's statements made during this interview before the arrival of his counsel were later suppressed by the district court.

consequence of the immunity agreements, the pending charge against Tapp for accessory to a felony was dismissed on January 17 and he was released from custody.

Tapp was again questioned on January 18 and 29. Before the January 29 interview began, the prosecutor informed Tapp and his attorney that the prosecutor considered the immunity agreements with Tapp to be void because Tapp had not been truthful in describing the crime. The prosecutor explained that Tapp's contention that Hobbs and Sargis were the rapists was contradicted by DNA tests showing that semen found on Dodge's body and clothing did not come from either of those men (or from Tapp). Despite this declaration from the prosecutor, Tapp and one of his attorneys continued with the January 29 interview. On that date, Tapp was given a polygraph test, during which he asked to be taken to the apartment where the murder occurred. Tapp's attorney agreed that the police could take Tapp to the crime scene for further questioning, but the attorney declined to accompany Tapp and the officers. Once at the crime scene, Tapp made statements implicating himself in the crimes. At the crime scene and later the same day at the LEB, Tapp admitted that he had held Dodge's arms and shoulders down throughout the rape and stabbing. In his new account of the events, Jeremy Sargis was replaced by a different male whose name Tapp could not remember. Some details of his story about how Dodge was raped and details of other events of that night changed during this and two subsequent interviews.

Tapp was rearrested after the January 29 interview. The next day, he was again charged with being an accessory to a felony. Tapp was further interviewed on January 30 and 31. On February 3, 1997, charges of rape, I.C. § 18-6101(3), (4), and first degree murder, I.C. §§ 18-4001, -4002, -4003(a), replaced the accessory charge.

*Tapp*, 136 Idaho at 357-58, 33 P.3d at 831-32. Tapp was found guilty by a jury. *Id.* at 358, 33 P.3d at 832.

On appeal, this Court ruled that the January 15, 17, 30, and 31 interviews violated Tapp's right to counsel and should have been suppressed. *Id.* at 362, 33 P.3d at 836. However, this Court held that the statements made on January 7, 10, 18, and 29 were not subject to suppression, specifically upholding the district court's finding that the statements were not the product of coercion or involuntary and that Tapp's *Miranda*[2] rights were not violated on January 29 because he was not in custody at the time of the January 29 statements. *Tapp*, 136 Idaho at 362-65, 33 P.3d at 836-39. Tapp's judgment of conviction was affirmed because this Court held that, beyond a reasonable doubt, the verdict would have been the same in light of his detailed confession on January 29. *Id.* at 366, 33 P.3d at 840.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Tapp filed a petition for post-conviction relief claiming both his trial and appellate counsel provided ineffective assistance. The district court summarily dismissed all of Tapp's claims. On appeal, in an unpublished opinion, this Court reversed and remanded for further proceedings on whether Tapp's trial counsel was ineffective during the suppression hearing for failing to present evidence that Tapp was in custody during the January 29 interview and failing to present evidence of Tapp's diminished mental capacity to show the confession was involuntary. This Court also affirmed the dismissal of Tapp's claims of ineffective assistance of trial counsel for failure to call Tapp to testify, claims of error for failure to consider ineffective assistance of counsel as a direct violation of the right to testify, and claims of ineffective assistance of appellate counsel for failure to argue the fruit of the poisonous tree doctrine. *Tapp v. State*, Docket No. 35536 (Ct. App. Mar. 31, 2010). Upon remand, the state moved for summary dismissal on different grounds. The district court granted the motion, and this Court affirmed in an unpublished opinion. *Tapp v. State*, Docket No. 40197 (Ct. App. Nov. 21, 2013).

Tapp filed the instant, successive petition while the initial appeal in the first post-conviction case was pending. This petition alleged Tapp was deprived of his right to testify. In contrast to Tapp's first petition, Tapp alleged a direct violation of his Sixth Amendment right, as opposed to the ineffective assistance claim brought previously. The petition asserted Tapp's counsel on his first petition provided ineffective assistance. The state filed a motion to dismiss. Tapp responded to the motion and filed an affidavit supporting his petition. This affidavit indicated Tapp would have testified that his confessions were not true and that police manipulated him into confessing. The district court denied the state's motion to dismiss. However, the district court, sua sponte, allowed the parties to address whether Tapp's deprivation of the right to testify claim should be dismissed under a *Chapman v. California*, 386 U.S. 18 (1967) harmless error analysis. Tapp responded to the notice and filed an additional affidavit. This affidavit indicated Tapp also would have testified in support of an alibi defense.

The state responded to the district court's notice and argued that, even if Tapp was denied the right to testify, such error was harmless beyond a reasonable doubt. The state also contended that Tapp failed to meet his initial burden of demonstrating a constitutional violation. Tapp objected to the state's latter argument, contending it was procedurally improper and not raised in the district court's notice of intent to dismiss. The district court summarily dismissed the successive petition, holding Tapp voluntarily waived his right to testify. Alternatively, the

district court held, even assuming a violation of Tapp's right to testify, any error was harmless beyond a reasonable doubt. Tapp appeals.

We need not address the merits of these arguments because the justification asserted by Tapp for allowing him to file a successive petition for post-conviction relief is that he received ineffective assistance of counsel in his first post-conviction proceeding. The Idaho Supreme Court recently determined that ineffective assistance of post-conviction counsel is no longer a sufficient reason for filing a successive petition for post-conviction relief. *Murphy v. State*, 156 Idaho 389, 327 P.3d 365 (2014). In *Murphy*, the petitioner attempted to file a successive petition for post-conviction relief, asserting that her claims of ineffective assistance of trial counsel were properly before the district court because her previous post-conviction attorneys had failed to properly present the claims in her initial petition for post-conviction relief or raise them in an amended petition. Murphy's argument relied on the Court's prior holding in *Palmer v. Dermitt*, 102 Idaho 591, 635 P.2d 955 (1981). In *Palmer*, the Court had held that alleging ineffective assistance of prior post-conviction counsel may provide sufficient reason for permitting newly asserted allegations or allegations inadequately raised in the initial petition to be raised in a subsequent post-conviction petition. *Id.* at 596, 635 P.2d at 960. The Court in *Murphy* determined that this was not in accord with subsequent United States Supreme Court and Idaho Supreme Court precedent and overruled *Palmer*. The Court reasoned that there is no right, statutory or otherwise, to post-conviction counsel. *Murphy*, 156 Idaho at 394-95, 327 P.3d at 370-71. *See also Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987); *Fields v. State*, 135 Idaho 286, 291, 17 P.3d 230, 235 (2000). Without a right to post-conviction counsel, there can be no deprivation of effective assistance of counsel. *Murphy*, 156 Idaho at 395, 327 P.3d at 371. *See also Coleman v. Thompson*, 501 U.S. 722, 752 (1991). As a result, a petitioner cannot demonstrate sufficient reason for filing a successive petition based on ineffectiveness of prior post-conviction counsel. *Murphy*, 156 Idaho at 395, 327 P.3d at 371.

In this case, Tapp failed to assert any sufficient reason for filing a successive post-conviction petition. Accordingly, the district court did not err in summarily dismissing Tapp's successive petition for post-conviction relief. No costs or attorney fees are awarded on appeal.

Chief Judge GUTIERREZ and Judge LANSING, **CONCUR.**