574 P.2d 1357

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Larry Allen RUTH, Defendant-Appellant.**

**No. 12280.**

Supreme Court of Idaho.

Feb. 16, 1978.

John F. Greenfield, Boise, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

McFADDEN, Justice.

Defendant-appellant Larry Allen Ruth appeals from a judgment finding him guilty of second degree murder and sentencing him to an indeterminate prison term not to exceed life. We affirm.

Appellant was charged with first degree murder and assault with a deadly weapon. The charges arose out of appellant's participation, apparently while intoxicated, in a drunken brawl and barroom shooting that left one man dead and another wounded. To these charges appellant pleaded not guilty by reason of mental defect on September 5, 1975. Apparently his court-appointed counsel intended to rely on evidence, some of which is in the record, that, in the words of the superintendent of the Wyoming State Hospital where appellant had voluntarily committed himself earlier, he suffered from "alcohol addiction, severe" and an "explosive personality."

Three weeks later, appellant changed his plea to guilty. In return, the prosecutor dismissed the assault charge and reduced the murder charge to second degree. The court accepted appellant's guilty plea to second degree murder and ordered a pre-sentence investigation. After receiving the pre-sentence report, the court sentenced appellant to an indeterminate term not to exceed life imprisonment.

On appeal, appellant asserts two errors. The first is that he was denied effective assistance of counsel. Appellant maintains that his appointed counsel advised him to plead guilty to second degree murder and that such advice was clearly incompetent in light of overwhelming evidence of alcohol addiction so serious as to render him incapable of the mens rea for either degree of murder. The second issue appellant raises on appeal is that the court erred in accepting his plea because he did not understand its significance.

■ On the first issue, the record contains no evidence supporting appellant's claims. The only direct evidence on this issue comes from appellant's trial counsel. At the change of plea hearing, in the presence of appellant, his trial counsel told the court:

" * * * I told Mr. Ruth that I had planned to file certain preliminary motions prior to the trial based on my knowledge of the law in the State of Idaho. I asked him—at that time he indicated he wished to enter a plea to a reduced charge and I told him that it was my advice that he wait until I was able to file my motions and await a decision of the court on the motions before he decided to enter such a plea. And, in spite of my advice and in spite of my personal opinions on the case, Mr. Ruth decided to enter a plea at this time against the advice of counsel. Now, I don't believe that he decided to do this because he was dissatisfied, although I would ask the court to inquire into that aspect of it, but he felt that, although he didn't agree with the evidence presented, he personally could not see any way to defend against it, and that was in spite of what [co-counsel] and myself talked to him about."

With that assertion appellant made no objection or protest.

In light of these statements in the hearing transcript, appellant's allegation of ineffective assistance of counsel is meritless.

■ On the basis of the record before us, we also find meritless appellant's claim that the court erred in accepting his plea without insuring that he understood its significance. The record shows that the court

made every reasonable attempt to make certain that appellant's plea was entered voluntarily and with a full understanding of its import.[1] On the basis of the trial court record, appellant's second claim is groundless.

The conviction is affirmed.

SHEPARD, C. J., and DONALDSON and BISTLINE, JJ., concur.

BISTLINE, Justice, specially concurring.

In the ordinary situation it might well be improper to decide the issue of competency of counsel on direct appeal, if there is a likelihood that an appellant could, when given the opportunity in post conviction proceedings, bring up a record supporting claims of inadequate representation. Justice Bakes, concurring in State v. Kraft, 96 Idaho 901, 539 P.2d 254 (1975), cogently set forth the reason why a hearing should ordinarily be required:

The question of competency of counsel is an extremely complex factual determination which, in all but the most unusual cases, requires an evidentiary hearing for determination. See, State v. Tucker, 97 Idaho 4, 539 P.2d 556 (1975). The resolution of those factual issues for the first time upon appeal, based upon a trial record in which competency of counsel was not at issue, is at best conjectural. Id. at 906, 539 P.2d at 259.

If, on appeal, counsel prematurely raises the competency of counsel issue, and gains an adverse determination in this Court, he may very well subject himself to like charges of incompetency—keeping in mind the threat of res judicata should the client later seek to have his claim of incompetence of trial counsel heard at a post conviction proceeding. On the other hand, there is an equal threat of later being told that competency of counsel should have been raised on direct appeal whenever appeal counsel is other than trial counsel. In calling for a reservation of the competency issue until a post-conviction hearing, Justice Bakes so far presents the better approach, both for adjudication by this Court and for guidance to counsel faced with the dilemma outlined above.

In this case nothing has been presented to this Court even tending to raise a factual issue as to the competence of trial counsel. For my part, I consider it so improvidently raised, that it would be better to consider it as not having been raised at all. The Court's opinion is bottomed on a record which leaves no doubt but that trial counsel had, so to speak, an incompetent client, a man who would not take the advice of counsel. The overall flavor of the record is that defendant entertained an extreme and

---

1. "THE COURT: You have indicated you desire to plead guilty to this?
MR. RUTH: Yes, I do.
THE COURT: And, you understand this?
MR. RUTH: Yes, I do.
THE COURT: You know the amount of the penalty that you can receive?
MR. RUTH: Yes, I do.
THE COURT: Any promises or threats or anything that has caused you to want to do this?
MR. RUTH: No, sir.
THE COURT: You have been advised by your attorney of your rights and his evaluation of your particular case?
MR. RUTH: Yes.
THE COURT: It's still your decision?
MR. RUTH: Yes, it is.
* * * * * *
THE COURT: Is there any question in your mind of what's being done? Do you have any doubts or misunderstandings of what's being done here?

MR. RUTH: No, sir, I don't.
THE COURT: You're fully aware that you might be going to the penitentiary for life?
MR. RUTH: Yes, sir, I do.
* * * * *
THE COURT: You have listened to the prosecutor and you've listened to your own attorney and from all of this you're making up your own mind?
MR. RUTH: Yes, I am.
THE COURT: And, there's no doubt about it?
MR. RUTH: There's no doubt.
THE COURT: Do you feel like any constitutional rights have been violated, any of yours?
MR. RUTH: No. No, sir.
THE COURT: You've discussed everything with your attorney, as near as you can tell?
MR. RUTH: Yes, sir, I have.
THE COURT: As near as you know?
MR. RUTH: Yes, sir, I have."

882

compelling fear that the jury would, as he stated, convict him of first degree murder. Mr. Ruth, under the trial court's extremely careful examination, also stated:

MR. RUTH: . . . It was just—I wouldn't know how to state it. But, if I fight first degree, I'm going to get it, you know. And if I do this, I might have a chance of getting out within five, you know, five or ten years. So, I decided I wouldn't have a chance against a jury.

. . . . .

MR. RUTH: Your Honor, I just do not believe that a jury would even listen to the defense that I—of what I would get up and say. There was too many statements in my preliminary that would be incriminating right there the fact that I did say—the witnesses said that I said, that I'm going to get a gun and shoot you and right there as far as I'm concerned is incriminating enough for me.

. . . . .

MR. RUTH: But this is not what made me change my mind on second degree. The reason is strictly because the jury, the fact that I get convicted that I'm going to hang, you know, and I don't think anybody, you know, exactly wants to face something like that.

Highly significant, in my view of the case, in light of the claim of incompetency, is one certain portion of the defense counsel's remarks as set forth in the Court's opinion, to-wit: "I told Mr. Ruth that *I had planned to file certain preliminary motions* prior to the trial based on my knowledge of the law in the State of Idaho." The opinion does not reflect that the plea bargain which cut off defense counsel's motions was initiated by defendant who acted in circumvention of his counsel. Undoubtedly one such motion defense counsel intended making was to challenge the lay magistrate's [1] decision to bind over for first degree murder. A successful motion under I.C. § 19–815A would have erased defendant's fear of going to the gallows, which overwhelmed him to the extent that he obviously was not the one to be making any decisions. Clearly, both the trial court and defense counsel did each his utmost to forestall the defendant in his pursuit of a bargain plea which he might later rue.

BAKES, Justice, dissenting:

This case is obviously headed for another round of hearings under post conviction relief proceedings, at which time the competency of representation on appeal will become a major issue. In order to forestall that probability, I would order that this matter be rebriefed and reargued before this Court.

---

1. The practice of putting lay magistrates into the awesome responsibility of examining magistrates does not meet with any approval on my part. If prosecutors can now pressure attorney magistrates to bind over as charged, or face up to the threat that the prosecutor can *ex parte* obtain a complete dismissal of a magistrate's commitment order, it is logical to assume that a lay magistrate called to duty as an examining magistrate will be even more susceptible to such pressures. *See, Stockwell v. State*, 573 P.2d 116 (Idaho, filed Dec. 2, 1977), and *Rufener v. Shaud*, 573 P.2d 142 (Idaho, filed Dec. 2, 1977), *rehearing denied.*