637 P.2d 415 (1981)
102 Idaho 638
STATE of Idaho, Plaintiff-Respondent,
v.
Larry Allen RUTH, Defendant-Appellant.
No. 13414.
Supreme Court of Idaho.
November 24, 1981.
*416 Ronald J. Jarman, Pocatello, for defendant-appellant.
David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.
SHEPARD, Justice.
This is an appeal from a district court denial of a petition for post-conviction relief wherein petitioner-appellant sought to have his guilty plea set aside. We affirm.
Petitioner-appellant, Larry Ruth, entered a plea of guilty to second degree murder, following which a judgment of conviction was entered and Ruth was sentenced to an indeterminate life term. He appealed and we affirmed. State v. Ruth, 98 Idaho 879, 574 P.2d 1357 (1978). Upon his petition for post-conviction relief, an evidentiary hearing was held and the petition was denied. Three principal contentions are raised on this appeal: Ruth asserts denial of his right to counsel at two separate stages, once when he held a meeting with the prosecutor in the absence of his attorney, and secondly, when his guilty plea was accepted over the objection of his counsel; and that procedural defects at the time of his guilty plea rendered that plea involuntary.
Following a "drunken brawl and barroom shooting," State v. Ruth, supra, Ruth was charged with first degree murder and assault with a deadly weapon and confined in the Caribou County jail. A public defender was appointed to represent him, a preliminary hearing was held, Ruth was bound over to the district court and returned to jail.[1] Ruth sent word to the prosecutor that he desired a meeting without his attorney being present. The prosecutor refused to meet with Ruth unless he would sign a statement indicating that he (Ruth) had asked for the meeting and that he did not desire the presence of his attorney. Ruth did sign such a written statement. Before any conversation took place, Ruth was read his Miranda rights, including his right to have an attorney present during the questioning and he signed a form stating that he waived those rights. At that meeting in the prosecutor's office in the absence of Ruth's attorney, an agreement was reached to drop the assault charge and reduce the first degree murder charge to one of second degree in exchange for a guilty plea by Ruth.
Thereafter, Ruth's attorney met with him, but failed in an attempt to dissuade Ruth from pleading guilty and a change of plea hearing was held. After the reading of the amended information charging Ruth with second degree murder, Ruth stated that he desired to plead guilty. His attorney objected to the entry of that guilty plea, indicating that he had several motions to present to the court. The court, however, *417 proceeded to examine Ruth to determine the voluntariness of his plea. The record clearly shows that Ruth feared going to a jury on a first degree murder charge with an intoxication defense and that he was very determined to plead guilty to a lesser charge. See State v. Ruth, supra. The record also clearly shows that the court was made aware of the plea bargaining session between the defendant and the prosecutor in the absence of defense counsel. Both defendant and defense counsel indicated to the court that they had no objection to that meeting. Following a somewhat extended examination, the court determined that Ruth's guilty plea was a rational, intelligent and voluntary choice made in the light of the evidence against him and the alternatives available to him and the guilty plea was accepted. Sometime later a sentencing hearing was held, final judgment entered and sentence imposed. At that hearing no motion was made to withdraw the guilty plea.
Appellant first asserts that when the prosecutor met with the defendant to discuss a plea bargain in the absence of and without first notifying defense counsel, such conduct was a violation of professional ethics. While a decision thereon is unnecessary to the resolution of this case, we call attention to the following authorities. Code of Professional Responsibility (1971), Disciplinary Rule 7-104; ABA Standards Relating to the Prosecution Function § 4.1(b) (1971); National District Attorneys Association, National Prosecution Standards § 16.2(B) (1977); State v. Yatman, 320 So.2d 401 (Fla.App. 1975); People v. Green, 405 Mich. 273, 274 N.W.2d 448 (1979); Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); cf., State v. Britton, 157 W. Va. 711, 203 S.E.2d 462 (1974); United States v. Crook, 502 F.2d 1378 (3d Cir.1974), cert. denied, 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975); Moore v. Wolff, 495 F.2d 35 (8th Cir.1974); United States v. Thomas, 474 F.2d 110 (10th Cir.), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973); United States v. Springer, 460 F.2d 1344 (7th Cir.), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972); United States v. Four Star, 428 F.2d 1406 (9th Cir.), cert. denied, 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970); Clifton v. United States, 341 F.2d 649 (5th Cir.1965); Shreeves v. United States, 395 A.2d 774 (D.C.App. 1978), cert. denied 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979). See also, United States v. Henry, 447 U.S. 264, 275 n. 14, 100 S.Ct. 2183, 2189 n. 14, 65 L.Ed.2d 115 (1980). But see, State v. Richmond, 114 Ariz. 186, 560 P.2d 41 (Ariz. 1976), cert. denied 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); State v. Nicholson, 77 Wash.2d 415, 463 P.2d 633 (1969).
Even assuming that there has been an ethical violation by a prosecutor, such does not mandate a reversal of a conviction. See State v. Garcia, 100 Idaho 108, 594 P.2d 146 (1979). Particularly is this true when the conviction rests upon a guilty plea which acts as a waiver of prior defects and certain constitutional rights. E.g., State v. Tipton, 99 Idaho 670, 587 P.2d 305 (1978); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
However, since one of the rights which survives a guilty plea is the defendant's right to counsel, Von Moltke v. Gilles, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed.2d 309 (1947); Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed.2d 1367 (1945); United States v. Washington, 341 F.2d 277 (3d Cir.1965), we are required to examine the circumstances of the meeting between Ruth and the prosecutor to ascertain if Ruth had a right to counsel at that time and, if so, whether that right was waived.
An accused is entitled to an attorney from the time of his initial appearance unless he waives such right. I.C.R. 44(a). Here Ruth did not initially waive his right to an attorney, but was represented by court appointed counsel at his preliminary hearing and at all subsequent proceedings.[2] *418 In addition, under the federal constitution an accused has the right to the presence of counsel at all critical stages of the proceedings against him. United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980); United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Hence, once judicial proceedings have been initiated, an accused is entitled to a lawyer. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). State courts are bound through the operation of the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Hence, under both I.C.R. 44(a) and federal constitutional standards, Ruth had a right to have his court appointed lawyer present at the meeting with the prosecutor.
Here the record demonstrates that Ruth waived his right to counsel at his meeting with the prosecutor to the extent that such waiver is or was effective in the absence of notification to and the securing of permission from defense counsel. Appellant Ruth, on this appeal, urges the fashioning of a per se rule forbidding prosecutors from engaging in plea negotiations with an accused in the absence of notification to and the securing of permission from defense counsel. We reject such invitation. Such a per se rule is not required by either Idaho's or the federal constitutional right to counsel. Although a few courts have held to the contrary, United States v. Thomas, 474 F.2d 110 (10th Cir.), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973); People v. Isby, 267 Cal. App.2d 484, 73 Cal. Rptr. 294 (1968); People v. Hobson, 39 N.Y.2d 479, 384 N.Y.S.2d 419, 348 N.E.2d 894 (1976), most courts that have considered the matter agree that a defendant's right to counsel can be waived without notice to or permission from defense counsel. Thompson v. State, 347 So.2d 1371 (Ala. Crim. App. 1977), cert. denied 434 U.S. 1018, 98 S.Ct. 40, 54 L.Ed.2d 765 (1978); State v. Richmond, 114 Ariz. 186, 560 P.2d 41 (1976), cert. denied 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); Shreeves v. United States, supra; State v. Yatman, 320 So.2d 401 (Fla.App. 1975); State v. Cotton, 341 So.2d 355 (La. 1977); Watson v. State, 282 Md. 73, 382 A.2d 574 (1978), cert. denied 437 U.S. 908, 98 S.Ct. 3100, 57 L.Ed.2d 1140 (1978); People v. Green, 405 Mich. 273, 274 N.W.2d 448 (1979); State v. Chandler, 605 S.W.2d 100 (Mo. 1980); State v. Nicholson, 77 Wash. 415, 463 P.2d 633 (1969); State v. Britton, 157 W. Va. 711, 203 S.E.2d 462 (1974); Lamb v. Commonwealth, 217 Va. 307, 227 S.E.2d 737 (1976). The view of those courts appears supported in Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). There the court held that a police officer's "Christian burial speech" during the transportation of the accused was tantamount to interrogation and violated Williams' right to counsel. The court emphasized, however: "The Court of Appeals did not hold, nor do we, that under the circumstances of this case Williams could not, without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as do we, that he did not." Id. at 405-06, 97 S.Ct. at 1242-43 (emphasis in original). Powell, J., concurring in the Court's decision, wrote: "[T]he opinion of the Court is *419 explicitly clear that the right to assistance of counsel may be waived, after it has attached, without notice to or consultation with counsel." Id. at 413, 97 S.Ct. at 1246. Hence, we hold that the right to counsel can be waived without notice to counsel.
We then proceed to determine whether there has, in fact, been a valid waiver of the right to counsel. The standard to be applied in determining whether there has been a valid waiver of the right to counsel appears to be whether there has been a "knowing and intelligent relinquishment or abandonment of a known right or privilege" and such determination rests on the facts of each individual case. Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981); Brewer v. Williams, supra; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In Edwards, the Court stated that once an accused has expressed a desire to deal only through his counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." 451 U.S. at 484, 101 S.Ct. at 1885 (emphasis added).
Here the record is clear that Ruth himself initiated contact with and requested communication with the prosecutor without the presence of his defense counsel. Ruth had previously asked for, received and utilized the services of a court appointed lawyer. He was advised and was aware of his right to have his counsel present during the meeting with the prosecutor. Prior to the meeting, Ruth was advised of his Miranda rights, including the right to counsel, and in writing waived those rights. He was at that time approximately 30 years old and the record indicates he had no problem understanding the English language, the nature of the proceedings against him, and the choices with which he was faced. Assuming that the circumstances of this case are governed by the Edwards standard of waiver, there is no question but that such standard is satisfied and we hold that Ruth understood his right to counsel and voluntarily relinquished and waived that right.
Ruth also contends that he was denied his right to counsel when the trial court accepted his guilty plea over the objection of defense counsel. It is clear that Ruth was entitled to have counsel at the time he entered his guilty plea, both under I.C.R. 44(a) and the constitutional test. Ruth's attorney was present at the time of the entry of his guilty plea. He argues that when the court accepted his plea over the objection of his counsel, the court rendered assistance of counsel ineffective. We disagree. While it is well settled that the right to counsel means the right to effective assistance of counsel, State v. Clayton, 100 Idaho 896, 606 P.2d 1000 (1980); State v. Tucker, 97 Idaho 4, 539 P.2d 556 (1975), Ruth cannot contend that the advice he received was incompetent because he is now attempting to do exactly what his counsel advised him to do in 1975, i.e., plead not guilty. Ruth had the advice and assistance of counsel at the time he entered his plea and there is no showing that this advice was anything but competent.
The ABA Standards Relating to the Defense Function (1971), at § 5.2(a) states: "[t]he decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter." In spite of his counsel's advice, Ruth declined to accept that advice and rather pleaded guilty. That decision being voluntary and intelligent must stand on appeal. Cf., North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Sparrow v. State, 102 Idaho 60, 625 P.2d 414 (1981). As the Supreme Court noted in Faretta v. California, 422 U.S. 806, 820, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975), the Sixth Amendment "speaks of the `assistance' of counsel, and an assistant, however expert, is still an assistant." Hence, while counsel may advise and "assist," the ultimate determination of the plea to be entered is by the accused. *420 Conversely, if an accused entered a plea of not guilty over the objections of and against the advice of defense counsel, there is no doubt that the court would be required to enter a plea of not guilty in accordance with the wishes of the accused, in spite of the objections, advice and wishes of defense counsel.
Ruth's final argument that his guilty plea was involuntary was presented squarely to this Court on the direct appeal, State v. Ruth, supra, and there held to be voluntary. Since the question was raised on direct appeal, it may not be relitigated here. Palmer v. Dermitt, 102 Idaho 591, 635 P.2d 955 (1981); Kraft v. State, 100 Idaho 671, 603 P.2d 1005 (1979); McClellan v. State, 100 Idaho 682, 603 P.2d 1016 (1979); Larsen v. May, 93 Idaho 602, 468 P.2d 866 (1970).
The judgment is affirmed.
BAKES, C.J., McFADDEN and DONALDSON, JJ., and McQUADE, J. (Ret.), concur.
NOTES
[1] The record discloses that while in jail Ruth was visited by one King who urged Ruth to contact the prosecutor and arrange a plea bargain. There is no indication that King was a representative of or an intermediary for the prosecutor or any law enforcement authority. Rather, it appears that King was a friend of Ruth's who was inadvertently shot by Ruth during the affray.
[2] The State argues that Ruth elected to act as his own attorney when he asked to meet with the prosecutor and that he is constitutionally entitled to do so. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Clayton, 100 Idaho 896, 606 P.2d 1000 (1980). Both Faretta and Clayton require that an accused be warned of the dangers of proceeding as his own counsel and in both those cases that decision to act without counsel was made in the presence of the trial court. Here there is nothing in the record to show that Ruth was so informed of the dangers of acting as his own counsel. Further, that decision was not made in open court, but in the jail and/or the prosecutor's office. Ruth made no attempt to discharge his attorney and, in fact, continued to consult with him at later times. Hence, we hold these actions are insufficient to be an assertion of a defendant's constitutional right to defend himself.