STATE of Missouri, Respondent,

v.

Antoine OWENS, Appellant.

No. 54127.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 19, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 18, 1991.

Case Transferred to Supreme Court
Jan. 28, 1992.

Case Retransferred to Court of Appeals
April 21, 1992.

Original Opinion Reinstated
April 23, 1992.

Dorothy M. Hirzy, Clayton, David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

A jury convicted defendant of two counts of murder, first degree. Section 565.020 RSMo 1986. The court sentenced him to two consecutive sentences of life imprisonment without eligibility for probation or parole. Defendant appeals. We affirm.

Defendant does not question the sufficiency of the evidence. He challenges the trial process.

After defendant was arrested, he was advised of his *Miranda* rights, appointed counsel and arraigned. Subsequently, he was questioned by the police without his counsel being present, and he made an inculpatory statement. The statement was admitted at trial over his objection. This admission, he contends, violated his Sixth Amendment right to counsel.

He also contends the trial court improperly limited his closing argument. This limitation, he contends, violated his Sixth Amendment right to a fair trial.

Defendant's contentions are based upon the United States Constitution, not our State Constitution. His contentions are not persuasive.

### Sixth Amendment Right To Counsel

The Fifth and Sixth Amendments to the United States Constitution each guarantee the assistance of counsel to those subjected to criminal investigation and prosecution. The Fifth Amendment guarantee is derived from that Amendment's express prohibition against compulsory self-incrimination. To implement that prohibition, the Supreme Court granted a suspect the right to counsel during a custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Sixth Amendment expressly guarantees the right "to have assistance of counsel for … defense." This right includes the right to legal representation at trial, *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) and at critical adversarial stages of the prosecution prior to trial. *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (1972). Although these rights to counsel serve separate purposes, they are parallel in function, each serving its respective purpose by guaranteeing the assistance of counsel during the course of a criminal investigation and prosecution. Parker, *Proposed Requirements for Waiver of the Sixth Amendment Right to Counsel,* 82 Col.L.R. 363, 364 (1982).

The parallel function of the two rights, at times, justifies the application of the same safeguards to both. One such safeguard is triggered by the invocation of either right. Once a suspect invokes his Fifth Amendment right to counsel at a custodial interrogation he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless [he] himself initiates further communication, exchanges, or conversations." *Edwards v. Arizona,* 451 U.S. 477, 484–

485, 101 S.Ct. 1880, 1884–1885, 68 L.Ed.2d 378, 385–386 (1981). This bright-line prophylactic rule was designed to keep the police from badgering a suspect. *Solem v. Stumes,* 465 U.S. 638, 646, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579, 589 (1984). It provides another layer of protection to the *Miranda* rule. *Id.* It does, however, apply with equal force to the Sixth Amendment right to counsel. Once an accused invokes that right, any subsequent interrogation must be initiated by him. *Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631, 642 (1986).

■ But, the *Edwards* rule is simply a prophylactic rule. Thus, a defendant's initiation of an interrogation does not of itself constitute a waiver of a previously invoked right to counsel. *See, e.g. Oregon v. Bradshaw,* 462 U.S. 1039, 1046–1047, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405, 412–413 (1983). The defendant must also distinctly waive that right before such an interrogation is valid. *Id.*

Defendant here contends that, after he invoked his Sixth Amendment right to counsel, he neither initiated the interrogation in question nor waived his right to counsel.

### Scope of Review

At trial, the State had the burden of showing defendant's initiation of interrogation and waiver of his right to counsel by a preponderance of the evidence. *See, e.g. Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 485 (1986); *State v. Lytle,* 715 S.W.2d 910, 915 (Mo. banc 1986). The trial court expressly found that defendant waived this right. It did not, however, expressly find that he initiated the interrogation. We believe the latter finding is implicit in the former. More important, in our review, we determine whether the court reached the correct result, regardless of the method it used to reach that result. In doing so, we defer to the court's determination of credibility, accept as true the evidence and permissible inferences supporting its finding and disregard all contrary evidence and inferences. *United States v. Scarpa,* 897 F.2d 63,

68 (2d Cir.1990); *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990).

### Facts

The trial court heard a number of witnesses on defendant's motion to suppress his statement. The testimony of only two of these is significantly relevant: police officers Aarnarian Snow and John Podolak.

On August 18, 1986, the police arrested defendant for the two murders in question and informed him of his *Miranda* rights. He signed a waiver of his Fifth Amendment right to counsel and then said he knew nothing about the murders.

On the next day, August 19, sometime between 10:00 a.m. and 12:00 p.m., counsel was appointed for defendant and he was arraigned. Apparently, his counsel also interviewed him. Neither the exact sequence nor the details of these events appear in the record. The state, however, tacitly agrees that the events are the functional equivalent of an express invocation of the Sixth Amendment right to counsel.

Later that day, Sergeant Herbert Riley, a homicide officer, told Officer Snow to pick up defendant's mother, Mrs. Emma Taylor, and bring her to the police station. Apparently Mrs. Taylor called the police because she wanted to tell them about a conversation she had with an alleged accomplice to the crimes. According to Officer Snow, during the car trip to the station, Mrs. Taylor told him that "she had talked to [defendant] on the phone and had persuaded him to tell the truth and that [a relative] had nothing to do with the murders.... She said [defendant] agreed he would talk to the police and tell the truth." On cross-examination, Snow admitted that Mrs. Taylor did not say that defendant specifically asked for the police "to go over to the jail and talk to him" nor did she say that defendant asked her "to bring a policeman to the jail." She told Snow, "[defendant] indicated that he was willing to talk to the police."

Snow and Mrs. Taylor arrived at the station around 2:50 p.m. He left her at the station with Sergeant Riley and Officer

Podolak, and he went to the city jail to talk to defendant. At the jail, Snow told defendant that he "had received information from [Mrs. Taylor] that he wanted to make a statement ... that he wanted to talk." And, when Snow was asked whether defendant confirmed that information, he answered, "Yes". Snow then advised defendant of his *Miranda* rights and questioned him.

According to Officer Podolak, Mrs. Taylor told him defendant had phoned her at 12:00 p.m. that day, and she said that, during the phone conversation, defendant told her, "He wanted to talk to the police and tell the truth."

■ We take people as they are and language as it is. Officer Snow said Mrs. Taylor told him that defendant "would" or was "willing" to talk to the police and tell the truth. Officer Podolak said Mrs. Taylor told him that defendant "wanted" to talk to the police and tell the truth. Thus, defendant was either "willing" or "wanted" to talk to the police, or both. Either state of mind of defendant meets the presently accepted meaning of "initiation". *Oregon v. Bradshaw, supra,* 462 U.S. at 1045–1046, 103 S.Ct. at 2834–2835.

The *Edwards* Court did not define "initiation". Subsequently, the Court discussed its meaning in *Bradshaw, supra.* The Justices, however, could not agree.

In *Bradshaw,* the defendant asked for an attorney after he was advised of his *Miranda* rights during an investigation of a dead body found in his wrecked pickup truck. Subsequently, while he was being transferred from the police station to the jail, he asked a police officer, "Well, what is going to happen to me now." The four—Justice plurality doubted that "it would be desirable to build a superstructure of legal refinement around the word 'initiate' in this context", but they did agree on a meaning acceptable to them. *Id.* "Inquiries or statements ... relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation" in the *Edwards* sense, but questions which "evinced a willingness and a desire for a generalized discussion about

the investigation would." *Id.* The four dissenting Justices defined "initiation" more narrowly as "communication or dialogue *about the subject matter of the criminal investigation.*" (emphasis theirs). *Id.* at 1053, 103 S.Ct. at 2839. The plurality found the defendant's question did "initiate" reinterrogation, although, as the dissenters noted, it appears that the defendant merely was trying "to find out where the police were going to take him." *Id.* at 1055, 103 S.Ct. at 2840.

The specific application by the *Bradshaw* plurality of their meaning of "initiation" notwithstanding, their definition has been accepted and used by most federal and state courts. *See cases collected,* LaFave and Israel, *Criminal Procedure,* § 6.9 (1984). This acceptance makes sense. The *Edwards* rule was designed to protect a defendant, not to constrain him. *Edwards* simply mandated that "it be the suspect who changes his mind, and not the authorities who change it for him." Bender, *Edwards v. Arizona,* 69 Cal.L.R. 1734, 1750 (1981).

Here, the impetus for the interrogation came from defendant through his mother, Mrs. Taylor. There was no suggestion that the police coached her to prompt defendant to talk to them. *People v. Lucas,* 132 Ill.2d 399, 139 Ill.Dec. 447, 454, 548 N.E.2d 1003, 1010 (1989). The police did not "badger" defendant. It was defendant who said he "wanted" or was "willing" to talk to the police. This "evinced a willingness and a desire for a generalized discussion about the investigation", *Bradshaw, supra,* 462 U.S. at 1046, 103 S.Ct. at 2835 and, therefore, defendant did "initiate" the interrogation in question.

*Waiver*

■ As noted, the State also has the burden of showing a waiver of the Sixth Amendment right to counsel. *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, 439 (1977). To carry its burden, the State must show the accused knew of the existence and scope of the right and voluntarily and intentionally relinquished it. *Id.; Johnson v. Zerbst,*

304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). "In other words, the accused must 'know what he is doing' so 'his choice is made with eyes open.'" *Patterson v. Illinois,* 487 U.S. 285, 292, 108 S.Ct. 2389, 2395, 101 L.Ed.2d 261, 272 (1988).

The State must rebut "every reasonable presumption against waiver." *Williams, supra,* 430 U.S. at 404, 97 S.Ct. at 1242. Although this burden has been labelled a "heavy burden", the Supreme Court has never explicitly characterized it as such. Moreover, in *Colorado v. Connelly, supra* 479 U.S. at 167–169, 107 S.Ct. at 521–523, the Court explained that, in the Fifth Amendment context, the State's "heavy burden" to prove waiver simply means proof by a "preponderance of the evidence". We apply that standard here. *United States v. Scarpa,* 897 F.2d 63, 67–68 (2d Cir.1990).

The parties do not dispute that defendant made his statement to Officer Snow voluntarily. They do dispute whether defendant did so knowingly and intelligently.

The State contends defendant knew the nature and extent of his Sixth Amendment right to counsel because Snow advised him of his Fifth Amendment *Miranda* rights before Snow interrogated him at the jail. On the facts here, we agree. *See Patterson v. Illinois, supra; Brewer v. Williams, supra.*

In *Patterson,* the defendant had not retained or been appointed counsel at the time of his postindictment interrogation, but before the interrogation he was advised of his *Miranda* rights. His subsequent statement, the Court held, was a "knowing and intelligent" waiver of his Sixth Amendment right to counsel. 487 U.S. at 296, 108 S.Ct. at 2397.

In this Sixth Amendment context, the Court used a "pragmatic approach to the waiver question", "asking what purposes a lawyer can serve at the particular stage of the proceeding in question, and what assistance he could provide to an accused at that stage...." *Id.* at 298, 108 S.Ct. at 2397–2398. To the Court, the warnings sufficient for *Miranda* purposes are also suffi-

cient for postindictment questioning. The commencement of formal proceedings "does not substantially increase the value of counsel to the accused", nor expand the "limited purpose" counsel serves when the accused is questioned. *Id.* at 298–299, 108 S.Ct. at 2398. The Court could not "discern a substantial difference between the usefulness of a lawyer to a suspect during custodial interrogation, and his value to an accused at a postindictment questioning." *Id.* Moreover, the Court specifically rejected the general suggestion that the Sixth Amendment right to counsel "is far superior" to that of the Fifth Amendment right and also rejected the corollary that therefore the waiver of the former is more difficult "to effectuate" than the waiver of the latter. *Id.* at 297, 108 S.Ct. at 2397.

But, the Court expressly limited the reach of *Patterson.* It emphasized it was addressing only the need for counsel at a post-indictment *questioning* and not the need for counsel at trial. *Id.* at 298, 108 S.Ct. at 2398; *see Faretta v. California,* 422 U.S. 806, 835–836, 95 S.Ct. 2525, 2541–2542, 45 L.Ed.2d 562, 581–582 (1975). More important here, the Court specifically noted that the defendant in *Patterson* had not retained nor had counsel appointed at the time of the interrogation. "Once an accused has a lawyer", the Court said, "a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect. *See Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487–488, 88 L.Ed.2d 481 (1985)." *Patterson,* 487 U.S. at 290, n. 3, 108 S.Ct. at 2393, n. 3.

This "distinct set of constitutional safeguards" is the guarantee of the Sixth Amendment that "the accused, at least after the initiation of formal charges, [has] the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton, supra,* 474 U.S. at 176, 106 S.Ct. at 487. The State must honor that right. "This means more than simply the State cannot prevent the accused from obtaining the assistance of counsel." *Id.* It means the State has the affirmative duty "to respect and preserve the accused's *choice* to

seek this assistance.... At the very least, the prosecutor and the police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." *Id.* (Emphasis added).

█ Once the Sixth Amendment right to counsel is invoked, the affirmative duty not to "circumvent" the invocation forbids the "deliberate elicitation" of incriminating statements by the surreptitious monitoring or taping of a defendant's conversation with an undercover informant. *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246, 250 (1964); *Moulton, supra.* And, this surreptitious conduct is forbidden whether the opportunity to engage in it is initiated or created by the defendant, *see Beatty v. United States*, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967), or by the State. *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). The narrow question here is whether the State's duty not to "circumvent" appointed counsel includes the duty to notify counsel that defendant wanted to talk before the State actually engaged in a face-to-face conversation with defendant. We think not.

█ Defendant's right to rely on his appointed counsel is a right not a constraint. He may still exercise his free will and conscious choice. *See Brewer v. Williams, supra* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424.

In *Brewer*, the defendant, a former mental patient and a deeply religious man, was arrested, retained counsel, and was arraigned on a charge of abduction of a girl who was missing. *Id.* at 390–391, 97 S.Ct. at 1235–1236. Although he had been advised by counsel not to make any statements, he responded with incriminating statements to a detective's expression of concern for the girl who could not be given a "Christian burial" because she was missing. *Id.* But, at no time before his response did defendant "express a willingness to be interrogated in the absence of an attorney." *Id.* at 392, 97 S.Ct. at 1236. Thus, although the defendant "appeared to understand" his right to counsel, the Court concluded he had not waived it because the State failed to show he intentionally relinquished it. *Id.* at 404, 97 S.Ct. at 1242.

However, the Court specifically stated it was not holding that "under the circumstances of this case, [the defendant] *could not,* without notice to counsel, have waived" his Sixth Amendment right; only that the defendant did not do so. *Id.* at 405–406, 97 S.Ct. at 1242–1243. (emphasis theirs). Concurring with the Court's opinion, Powell, J. said: "[T]he opinion of the court is explicitly clear that the right to assistance of counsel may be waived, after it has attached, without notice to or consultation with counsel." *Id.* at 413, 97 S.Ct. at 1246. This dicta has been followed or approved by most courts prior to and after *Moulton, supra. See, e.g., State v. Ford*, 793 P.2d 397, 400–401 (Utah App.1990); *State v. Ruth*, 102 Idaho 638, 641, 637 P.2d 415, 418 (Idaho 1981) and cases collected therein. *But see, People v. Hobson*, 39 N.Y.2d 479, 384 N.Y.S.2d 419, 421, 348 N.E.2d 894, 897 (1976) ("once counsel enters the proceedings", state constitution permits waiver only in the presence of counsel.).

█ We see no reason why defendant here could not choose to waive assistance of counsel "without notice or consultation with counsel". Defendant was, to be sure, protected from the police initiating reinterrogation. *Jackson, supra.* But he was not prohibited from initiating the reinterrogation himself. Moreover, the "elicitation" of the statement from defendant was not surreptitious. Before Snow began talking to defendant, he, first, had defendant confirm that he did want to talk. Snow, then, again advised defendant of his *Miranda* rights. Thus, defendant here, no different than the defendant in *Patterson*, was not only advised of his right to consult with his lawyer and to have him present while he was being questioned, he also was advised that his statement could be used against him in the subsequent proceedings. This advice was sufficient to inform defendant of the need and benefit of counsel at this postarraignment questioning. *Patterson, supra.* Defendant's decision to talk to

Snow after this advice was, therefore, a "knowing and intelligent" waiver. We have found no court which disagrees with this analysis and application of *Patterson,* and defendant cites none.

### Limitation of Closing Argument

 During his closing argument, defendant attempted to argue that Ms. Pamela Trotter, a state's witness, lied about her lack of involvement in the murders. The trial court sustained the state's objection to this argument, finding it was "not a logical inference" from the evidence. To consider defendant's argument in its proper context, we flesh out the facts.

The murdered victims were Ms. Loretta Trotter and Mr. Jerome Redden. They lived together in Mr. Redden's apartment. They were murdered during the course of a burglary of the apartment by five men, alleged to be defendant and four others.

Prior to defendant's trial, three of these men pleaded guilty to the two murders and burglary, as accomplices. They detailed the crimes. They said defendant planned the burglary and was the actual killer.

Ms. Pamela Trotter is the sister of the female victim, Loretta Trotter, and was the girlfriend of defendant at the time of the murders. She testified that she overheard defendant talking to other people about the murders and detailed what she overheard. She described how defendant entered the victim's apartment; the injuries the victims' received; which of the participants inflicted those injuries; what property was taken from the apartment; where it was taken and how it was taken there.

But, when asked on cross-examination about other details, she allegedly gave to the police in a taped statement, she denied or did not remember giving these details. On re-direct examination, she said the victims would not have allowed defendant to enter their apartment if she were not with him.

Based on these facts, defendant, during his closing argument, argued that Pamela Trotter

knew exactly what happened in that apartment, and where is her sorrow, where is her caring? There were women on the corner. I submit to you anyone that knows that much about what took place was there, involved in the killing of her own sister.

This was the argument to which the prosecutor objected and the court found "not a logical inference from the evidence."

On appeal, defendant argues the trial court improperly refused "to permit" his argument and improperly discredited it. It is a logical inference that Pamela Trotter "was the person who got the burglars/killers into the apartment," he contends, because her knowledge of the murders was "too detailed to have come from 'overhearing' such an intricate explanation" and because she said the victims would not have let defendant into the apartment without her being present. This inference would have provided the basis, he contends, to argue further that she lied "to conceal her own culpability in the murder [sic]."

 A defendant should be given wide latitude in his closing argument. *E.g., State v. McDonald,* 661 S.W.2d 497, 506 (Mo. banc 1983). The trial court, however, is given broad discretion to determine the limits of that argument. *Id.* A defendant may argue inferences justified by the evidence. He may not argue inferences unsupported by the facts or argue from imagined facts. *State v. Fuhr,* 660 S.W.2d 443, 448 (Mo.App.1983). *See also State v. Murphy,* 592 S.W.2d 727, 732 (Mo. banc 1979).

No one testified that Pamela Trotter was at or near the scene of the crimes. Two of the participants did testify there were women near the apartment at the time of the crimes. However, neither said Pamela was one of those women. To the contrary, one said Pamela was not among those women.

Pamela is the sister of one of the murdered victims. Arguably, her testimony that the victims would not have let defendant in without her and her detailed knowledge of the crimes may make her presence or involvement possible inferences. They

are not, however, necessary or probable inferences. They can be characterized sensibly as attenuated, particularly the suggested inference that Pamela was concealing her "own culpability" in the murder of her sister. The trial court was well within its discretion in characterizing these inferences as "not logical."

Judgment affirmed.

CARL R. GAERTNER, C.J., and SMITH, P.J., concur.