STATE of Utah, Plaintiff and Appellee,

v.

Onan Earl FORD, Defendant
and Appellant.

No. 890272–CA.

Court of Appeals of Utah.

May 17, 1990.

Robert L. Froerer, Ogden, for defendant and appellant.

R. Paul Van Dam and Dan R. Larsen, Salt Lake City, for plaintiff and appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

Defendant appeals his conviction for aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76–6–302 (1978). He argues that the trial court erred in denying his motion to dismiss for prosecutorial misconduct and also in denying his motion to quash identification testimony resulting from a "show-up." Although we see no error in the trial court's ruling on the motion to quash concerning the challenged identification testimony, we hold that defendant was potentially prejudiced by the improper actions of the prosecutor and therefore vacate defendant's sentence and remand for further proceedings and resentencing.

## FACTS

On January 11, 1988, an individual entered a convenience store. He asked the store attendant for the restroom key and went outside. Ten minutes later he returned, placed the key on the counter and again left the store. He then re-entered the store, picked up a box of Reynolds Wrap and placed it on the counter, pulled a handgun from his pocket and said, "Give me all the money you have got." The attendant opened the cash register and simultaneously activated a silent alarm. The robber grabbed some money from the register and exited the store.

The attendant called the police who, soon thereafter, arrived and began an investigation. An officer observed fresh footprints leaving the convenience store and began to follow them. The prints in the snow led to some discarded clothing and ultimately to a residence nearby. A young girl told the officer that her parents and some friends had gone to the store in a light blue vehicle. Moments later, a vehicle matching that description was stopped in the same neighborhood. Defendant was seated in the back seat of the car and was wearing tennis shoes with treads that matched the footprints in the snow.

Defendant was advised of his *Miranda* rights and taken to the police station. While at the station, the convenience store attendant observed defendant along with two other men of defendant's race and positively identified defendant as the robber. Defendant was then arrested and charged with the crime. He retained Merlin Calver as his attorney in the case.

While subsequently awaiting trial at the Weber County Jail, defendant contacted the Ogden City Police Department and discussed the possibility of trading information about a cellmate in exchange for a "deal" on his own case. A written agreement was reached between defendant and the Weber County Attorney's Office that defendant would cooperate in a "sting operation" designed to recover stolen property in his cellmate's case ("the Scott case"). In exchange, the prosecutors agreed that, although the case would proceed to trial, they would take no position on defendant's sentence, take no position regarding the gun enhancement portion of the sentence, send a letter to the Board of Pardons describing the assistance given by defendant, and "do everything in [their] power to ensure that any prison time ... [would] be served in some location other than the Utah State Prison." [1] The agreement was reached without the involvement, or even the knowledge, of defendant's attorney,

---

1. Defendant argues that the last concession was the primary impetus for his agreement to participate in the sting operation. Moreover, he claims that the concession actually meant he would be placed in a halfway house. The trial court found no evidence to this effect but observed that "the County Attorney will probably stand behind what they have said, although sentencing is left to the judge."

Merlin Calver. The County Attorney's Office never advised defendant to first consult with his attorney and defendant claims that he was discouraged from doing so.

During the sting operation, in which stolen diamonds were successfully recovered, defendant made incriminating statements regarding his own case which were recorded by the police through a body wire concealed on his person. However, the County Attorney's Office did not attempt to introduce any of these statements at trial. Moreover, the state claims that the prosecutor responsible for defendant's case was shielded from any information gathered during the sting operation.

When Merlin Calver later learned of the agreement between defendant and the County Attorney's Office, he filed a complaint with the Utah State Bar against the prosecuting attorneys and withdrew from the case. He based his withdrawal on two conclusions. First, communications and cooperation with the County Attorney's Office were strained due to the bar complaint. Second, he suspected that he might be called as a witness in the criminal case pending against defendant. Ultimately, he felt that he could no longer be effective as counsel for defendant. Prior to withdrawing, Mr. Calver filed a motion to dismiss for prosecutorial misconduct and also a motion to quash the line-up. He then withdrew and defendant was subsequently represented by his present counsel, Robert Froerer.

Attorney Froerer filed an additional motion to recuse the County Attorney's Office. On the 7th and 8th of June 1988, a hearing was held on the motions to quash, to dismiss, and to recuse. The court held that the incident at the police station was essentially a show-up and that the defendant had failed to show any misidentification or any impropriety. Regarding the prosecutorial misconduct, the trial court denied the motion to dismiss because defendant was the one who initiated the contact with the prosecutors and the court found no prejudice to the defendant. The motion to recuse was also denied.

A two-day jury trial was held in June 1988. The state's evidence included testimony from seven witnesses; the abandoned clothing which contained a handgun and cash closely approximating the amount stolen from the convenience store, a hair analysis comparing a sample of defendant's hair with a sample taken from a hat found with the discarded clothing, a comparison of the tread on defendant's tennis shoes with a photograph of one of the shoe prints left by the fleeing robber, the Reynolds Wrap box which contained a thumb print identical to that of defendant, and the positive identification of defendant at the show-up. At the close of the trial, defendant was convicted as charged and sentenced by the trial judge to a term of not less than five years, to life, in the Utah State Prison.

Defendant argues that the trial court erred in denying his pretrial motion to dismiss for prosecutorial misconduct. His claim is based on rule 4.2 of the Utah Rules of Professional Conduct and the Sixth Amendment's right to the assistance of counsel. We will address these claims separately.

## UTAH RULES OF PROFESSIONAL CONDUCT, RULE 4.2

■ Defendant initially argues that his conviction should be reversed solely because the prosecutors violated rule 4.2 of the Utah Rules of Professional Conduct. That rule provides: "[A] lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." [2] Although this rule does not specifically address prosecutors, "[t]here is unanimous and fully documented authority for the proposition that prosecutors are no

---

2. *The Code of Professional Responsibility*, previously in effect, contained a nearly verbatim provision. DR 7–104(A)(1) (1980) prohibited a lawyer from "communicat[ing] on the subject of the representation with a party he knows to be represented by a lawyer in that matter, unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

less subject to the prohibition against communication with a represented person than are members of the private bar." *United States v. Jamil*, 546 F.Supp. 646, 652 (E.D. N.Y.1982), *rev'd on other grounds*, 707 F.2d 638 (2nd Cir.1983). *See also United States v. Thomas*, 474 F.2d 110, 111 (10th Cir.), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973).

Based on the information before us, it appears that Rule 4.2 was indeed violated when the County Attorney's Office communicated with defendant without the knowledge and consent of his attorney. The fact that defendant initiated the contact would not excuse the County Attorney's Office from adherence to Rule 4.2.[3] *See People v. Green*, 405 Mich. 273, 274 N.W.2d 448, 453 (1979) (discussing this proposition and citing several authorities which are in accord, including *Thomas*, 474 F.2d at 111).

Despite the apparent violation of Rule 4.2, defendant is not automatically entitled to a reversal of his conviction. *See* Preamble: Scope, Utah Rules of Professional Conduct (violation of ethical rules does not "create any presumption that a legal duty has been breached"). In *People v. Green*, the Michigan Supreme Court addressed a similar argument that a conviction should be reversed solely upon the basis of a violation of DR 7–104(A)(1). *See* Note 2, *supra.* We find the discussion in that case persuasive.

> The provisions of the code are not constitutional or statutory rights guaranteed to individual persons. They are instead self-imposed internal regulations prescribing the standards of conduct for members of the bar. Although it is true that the principal purpose of many provisions is the protection of the public, the remedy for a violation has traditionally been internal bar disciplinary action against the offending attorney.

274 N.W.2d at 454. *Accord Thomas*, 474 F.2d at 112; *Jamil*, 546 F.Supp. at 657. Adopting the reasoning in these cases, we will not disturb defendant's conviction based simply on the violation of Rule 4.2 of the Utah Rules of Professional Conduct. Any appropriate remedy lies with the disciplinary arm of the Utah State Bar.

### THE SIXTH AMENDMENT

■ Alternatively, defendant argues that his conviction should be reversed because the state violated his Sixth Amendment right to counsel. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment has been interpreted to mean that a defendant "has a constitutional right to the assistance of counsel at all critical stages of the prosecution." *State v. Hamilton*, 732 P.2d 505, 506–07 (Utah 1986). However, defendant may waive this right and choose to represent himself "provided that he has knowingly and intelligently waived that right." *Id.* at 507. Moreover, although "it is clear that a prosecutor's interference with a defendant's relationship with his attorney *may* render counsel's assistance so ineffective as to violate his Sixth Amendment right to counsel," *United States v. Irwin*, 612 F.2d 1182, 1185 (9th Cir.1980) (emphasis in original), "the right is only violated when the intrusion substantially prejudices the defendant." *Id.* at 1187. In analyzing defendant's claim we must (1) examine whether there was an intrusion into the attorney/client relationship; (2) if so, determine whether defendant waived his Sixth Amendment right; and (3) if he did not, consider whether any prejudice resulted from the intrusion.

---

**3.** The state also attempts to defend its actions on the basis that defendant never requested that his attorney be present at the negotiations. Defendant argues to the contrary. Regardless of whether defendant requested that counsel be present or not, the state concedes that it knew defendant was represented and no efforts were made to include defense counsel. Rule 4.2 unequivocally prohibits an attorney from communicating directly with another's client except·in two limited circumstances—prior consent of the attorney or authorization by law. It places no burden whatsoever upon defendant to see that his attorney is present.

### 1. INTRUSION INTO THE ATTORNEY/CLIENT RELATIONSHIP

█ There is no question that the prosecutors in this case intruded into the attorney/client relationship. As noted above, defendant "has a constitutional right to the assistance of counsel at all critical stages of the prosecution." *Hamilton*, 732 P.2d at 506–07. The United States Supreme Court has recognized that this right to counsel is very important "during perhaps the most critical period of the proceedings [against the defendant] ... from the time of [the] arraignment until the beginning of [the] trial, when consultation, thorough-going investigation and preparation [are] vitally important." *Massiah v. United States*, 377 U.S. 201, 205, 84 S.Ct. 1199, 1202, 12 L.Ed.2d 246 (1964) (quoting *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 59–60, 77 L.Ed. 158 (1932)). This is certainly true during preliminary negotiations aimed at striking a bargain with the state. *See, e.g., State v. Swindell*, 93 Wash.2d 192, 607 P.2d 852, 855 (1980) (en banc) ("presence of counsel during all stages of plea bargaining is mandated by the courts"); *State v. Johnson*, 23 Wash.App. 490, 596 P.2d 308, 312 (1979) ("defendant had the right to have counsel in plea negotiations under the sixth amendment").

### 2. WAIVER

█ It is generally recognized that, although a defendant has a right to counsel in all critical stages of a criminal proceeding, at least as a matter of constitutional law "defendant's right to counsel can be waived without notice to or permission from defense counsel." *State v. Ruth*, 102 Idaho 638, 637 P.2d 415, 418 (1981) (listing authority for this proposition from numerous jurisdictions).

If an accused can voluntarily, knowingly, and intelligently waive his right to counsel before one has been appointed, there seems no compelling reason to hold that he may not voluntarily, knowingly, and

intelligently waive his right to have counsel present ... after counsel has been appointed.

*Moore v. Wolff*, 495 F.2d 35, 37 (8th Cir. 1974). Although Utah appellate courts have apparently not specifically addressed this issue, we are persuaded that a represented defendant can waive his right to counsel without that counsel's advice or permission.[4] Consequently, we must analyze whether defendant validly waived his right to counsel during the negotiations he had with the prosecutors.

In order for there to be a valid waiver, the state has the burden to show the existence of a voluntary, knowing and intelligent waiver. *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). "Waiver may not be presumed from a silent record. 'The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'" *State v. Hamilton*, 732 P.2d 505, 507 (Utah 1986) (quoting *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962)).

The Idaho Supreme Court addressed a similar problem in *Ruth*. In that case, defendant Ruth sent word to the county prosecutor that he desired a meeting outside the presence of his counsel. The prosecutor agreed to the meeting but only if defendant would sign a written statement indicating that he had requested the meeting *and* that he desired to waive his right to counsel. At that meeting the defendant agreed to plead guilty in exchange for a reduction of the charge. The Idaho Supreme Court found a valid waiver of defendant's Sixth Amendment right and affirmed the judgment below. 637 P.2d at 419–20.

In this case, unlike *Ruth*, the state based its waiver claim solely upon the fact that defendant initiated the contact. Moreover, the state's prosecutors testified that the presence of defense counsel was never dis-

---

**4.** We wish to reemphasize that although defendant may choose to waive his right to counsel, his mere waiver does not excuse the state from adhering to rule 4.2 of the Utah Rules of Professional Conduct.

cussed, one way or the other. The trial court made no specific findings regarding the issue of waiver.[5]

As discussed above, the state assumed a questionable position when it agreed to communicate directly with defendant without the knowledge and permission of his counsel. To validate any dealings that it thereafter had with defendant, the state had the duty to obtain an unambiguous waiver of defendant's right to counsel as required by the Utah Supreme Court in *Hamilton*, and accomplished by the prosecutor in *Ruth*. If, as the state concedes, the involvement of defense counsel was not even discussed between the prosecutors and defendant, it follows that the state failed to meet its burden and cannot show it obtained a voluntary, knowing, and intelligent waiver.

### 3. PREJUDICE

Although there was conduct by the prosecutor at odds with defendant's rights under the Sixth Amendment, any error caused by the conduct will be disregarded unless we find that it affected a substantial right of the defendant. *See* Utah R.Crim.P. 30(a); *State v. Lafferty*, 749 P.2d 1239, 1255 (Utah 1988). Thus, even though defendant had a right to counsel during negotiations with the state and even though he did not validly waive his right to counsel, we will only find a Sixth Amendment violation if he was substantially prejudiced by the state's actions. *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir.1980). *See* Utah R.Crim.P. 30; *State v. Knight*, 734 P.2d 913, 920–21 (Utah 1987). Finally, defendant was prejudiced only if we "conclude that absent the [misconduct], there is a reasonable likelihood of a more favorable outcome for the defendant," *Lafferty*, 749 P.2d at 1255, and "counsel's presence would have helped avoid that prej-

udice." *Schantz v. Eyman*, 418 F.2d 11, 13 (9th Cir.1969), *cert. denied*, 397 U.S. 1021, 90 S.Ct. 1259, 25 L.Ed.2d 530 (1970).

At the hearing prior to trial, the court concluded that defendant suffered no prejudice from his interactions with the state without the aid of counsel. Defendant raised several potential elements of prejudice from his interactions with the state including: the state gained valuable information about his case during the sting operation which may have bolstered its case against him; he was deprived of the assistance of counsel of his choosing because of Mr. Calver's resignation upon learning of the prosecutors' contact with his client; and, with the guidance of counsel during negotiations with the state, he might have attained a better bargain. We will analyze each of these contentions separately.

#### a. *Prejudicial Communications During Sting Operation*

■ Defendant argues that the state gained valuable information about his case during the sting operation concerning the Scott case. Defendant does not argue that any evidence was admitted during trial which was acquired during the sting operation, but, rather, he argues that the state acquired information regarding the defense's plans and strategies which it then used to fashion and bolster its own case. Although not entirely without merit, this argument is not very persuasive and courts have been unwilling to reverse a conviction based upon unsubstantiated allegations of this kind. *See, e.g., United States v. Morrison*, 449 U.S. 361, 365–67, 101 S.Ct. 665, 668–69, 66 L.Ed.2d 564 (1981); *Irwin*, 612 F.2d at 1187–88.

In view of the considerable evidence which the state had prior to the sting operation, it is unlikely that any information

---

**5.** The dissenting opinion observes that the court made a minute entry in which it stated: "Court finds no violation of the 6th amendment." Although couched as a finding, the statement is actually a legal conclusion and "we do not accord conclusions of law added deference simply because they are denominated findings of fact." *State v. Rio Vista Oil, Ltd.*, 786 P.2d 1343, 1347 (Utah 1990). We believe such a conclusion can-

not be premised on waiver grounds where the state admitted the subject of defendant's legal representation was not even discussed with defendant. The inferences concerning waiver drawn by our colleague in dissent are not inherently unreasonable, but the very need to infer demonstrates an *unambiguous, informed* waiver was not made by defendant.

gained during the sting operation could have added much to their case against defendant. With guidance from counsel, defendant might have avoided the disclosure of any incriminating evidence, but it is unlikely that this would have created a different result at trial and that no such information was used at trial. Moreover, the trial court found that the state had implemented procedures to keep any information gleaned during the sting operation from being used against defendant at trial. Consequently, defendant's first argument does not demonstrate the existence of prejudice.

### b. *Loss of Attorney of His Choice*

In *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the United States Supreme Court interpreted the Sixth Amendment to mean that "defendant should be afforded a fair opportunity to secure counsel *of his own choice.*" *Id.* at 53, 53 S.Ct. at 58 (emphasis added). A defendant has the right to choose his counsel because the Sixth Amendment "grants to the accused personally the right to make his defense." *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). If the defendant does not choose or acquiesce in the appointment of counsel, "the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." *Id.* at 821, 95 S.Ct. at 2534 (emphasis in original). Since *Powell,* courts have consistently and assiduously protected this right. *See Wilson v. Mintzes,* 761 F.2d 275 (6th Cir.1985) (thorough and scholarly discussion of a defendant's right to choose his own counsel, with numerous cases cited supporting that proposition).

Although courts recognize the right to counsel of one's choice, they also recognize that the right is not absolute. For example, the Tenth Circuit has held that a defendant does not have the right to delay trial while he searches in vain for an attorney who agrees with his views. "A defendant's right to obtain counsel of his choice must be balanced against the need for the efficient and effective administration of criminal justice." *United States v. Weninger,* 624 F.2d 163, 166 (10th Cir.1980), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

Defendant does not claim that the loss of Mr. Calver prevented him from effectively asserting his defense at trial or that substitute counsel otherwise inadequately represented him. In the absence of such demonstrable prejudice, the deprivation of Merlin Calver's services to defendant, as such, does not warrant any relief to defendant. But as we see it, the real issue in this appeal is whether defendant was prejudiced by not having the assistance of legal counsel during pretrial negotiations with the state—not who that counsel would have been and not whether he received adequate counsel at trial.

### c. *Better Bargain*

Finally, defendant argues that he was prejudiced because, with the benefit of counsel, he could probably have gotten a better bargain in exchange for his assistance in implementing the sting operation pertinent to the Scott case. The state conceded at the suppression hearing that in certain circumstances a more advantageous arrangement might have been achieved. Obviously, the state now argues that defendant got the best possible bargain notwithstanding his lack of assistance from counsel. As a practical matter, on the record before us we have no way of knowing what a criminal attorney with skill and experience in negotiating might have been able to obtain for defendant in exchange for defendant's unique ability to help the state with the Scott case.[6] The very reason that we require attorneys to be a part of the negotiation process is that "[a] layman is usually no match for the skilled

---

6. The state argues that it would not have been willing to strike a more advantageous bargain with Mr. Calver. Frankly, the argument appears somewhat disingenuous. Although the prosecutors clearly had enough evidence to make a strong case against defendant, they ap-

pear from the record to have been very desirous of gaining additional evidence in the Scott case. They used defendant's services quite extensively in their investigations, presumably because they found those services to be of considerable value.

prosecutor.... He needs the aid of counsel lest he be the victim of overzealous prosecutors, of the law's complexity, or of his own ignorance or bewilderment." *Williams v. Kaiser*, 323 U.S. 471, 476, 65 S.Ct. 363, 366, 89 L.Ed. 398 (1945).[7] It is entirely likely that defendant was prejudiced by the absence of his attorney during the negotiations. Common sense alone suggests that whatever deal defendant was able to secure left to his own devices and comparative ignorance could only have been improved upon with the aid of counsel.

It is of course difficult to specifically identify or quantify the prejudice to defendant in this case. However, "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). We believe any doubt about the existence of prejudice should be resolved in favor of defendant in this unusual case. *Cf. State v. Knight*, 734 P.2d 913, 920–21 (Utah 1987) (where, by its very nature, prosecutor's failure to provide inculpatory evidence in discovery cannot be meaningfully assessed for prejudice due to lack of relevant evidence in record, burden shifts to state to convince reviewing court there was no prejudice when "the defendant can make a credible argument that the prosecutor's errors have impaired the defense"). We cannot say defendant was prejudiced by entering into a bargain without counsel's involvement, but we must concede that the possibility is likely enough that further exploration of that issue is in order.

## APPROPRIATE REMEDY

In evaluating defendant's pretrial objection to the violation of his Sixth Amendment right to counsel, structured as a motion to dismiss for prosecutorial misconduct, the trial court focused on defendant's initiation of the discussions with the prosecutor and on the lack of any prejudice to defendant in the ensuing trial. We have concluded it is irrelevant that defendant, rather than the prosecutor, initiated the dialogue. However, we agree that no prejudice resulted to defendant *at trial* because of his deal made without the assistance of counsel. The evidence against defendant, amassed by the authorities in advance of the deal being struck, was overwhelming and readily would support defendant's conviction for aggravated robbery. Nonetheless, these facts do not satisfy our concern that defendant may well have been prejudiced by the lack of counsel's help in his pretrial negotiations.

What is not in the record before us is the quantum of evidence available to the state in the Scott case prior to the sting operation, the seriousness and scope of charges in that case, that case's potential for such things as breaking up a theft ring or fencing operation or to resolve a number of unsolved crimes, and the importance of defendant's contribution to the state's efforts in that case. In other words, we are unable to glean from our record the extent of defendant's real bargaining power by reason of what he could do to help the state in its case against Scott *notwithstanding* his obvious guilt in his own case.

Not even defendant contends outright dismissal of the charges against him was in the cards. On the other hand, the conclusion seems inescapable that a better deal could probably have been obtained with the help of skilled legal counsel than defendant was able to strike on his own. Depending on how important defendant's assistance was to the state, counsel may have succeeded in securing additional or more specific sentencing recommendations or other concessions. Perhaps even a guilty plea to

---

**7.** In *Kaiser*, the United States Supreme Court was dealing with the entry of a guilty plea. We recognize that the agreement reached in this case was not, in actuality, an outright plea bargain. However, the imbalance in negotiating skills between a trained prosecutor and a common criminal still existed and we see no reason to deny constitutional protections to the defendant when the negotiations result in a "deal" concerning sentencing rather than a plea per se. *See, e.g., United States v. Garcia*, 519 F.2d 1343, 1345 (9th Cir.1975) (constitutional principles apply to "deferred prosecution agreement" as well as actual plea bargain).

reduced charges might have been forth-coming.

Of course, since defendant has been duly convicted at trial of the serious charge against him, there is an understandable impetus to wash away the pretrial deprivation of his right to counsel in a context almost collateral to his own case on "harmless error" or similar grounds,[8] especially given the practical difficulties in "making things right" at this late date and now that the state is fully aware of exactly what the sting operation could produce. Yielding to that urge, however, would leave us in the even less tenable position of washing away a potentially prejudicial Sixth Amendment violation by the state, whose interest in justice and fairness should transcend its enthusiasm for preserving this defendant's conviction and sentence as entered.

Given this imperfect state of affairs and the highly unusual posture of this case, we believe justice requires a remedy which is itself unusual. We accordingly vacate defendant's sentence. We remand to the trial court with instructions that an evidentiary hearing be held to consider whether and to what extent defendant was prejudiced by his bargaining with the state without counsel. This will require both an evaluation of the Scott case and how important defendant's role would have been in helping the state acquire the evidence it apparently needed.

Having determined what defendant had to offer and how valuable it was to the state, the court should then determine what bargain defendant would likely have struck had competent defense counsel been a key participant in the negotiations. Testimony from experienced defense attorneys as well as from prosecutors with no direct stake in the outcome may prove helpful in this regard.

Having considered all appropriate evidence, if the court concludes that defendant would realistically have received no better deal with counsel's involvement than he obtained by himself, the sentence previously entered may simply be reimposed. If the court determines that defendant would have obtained different or additional sentencing recommendations or concessions, then the court should resentence defendant as though that consideration had been realized. Finally, if the court should conclude that in light of what the state needed in the Scott case and what defendant had to offer, competent counsel would probably have secured a bargain permitting defendant to plead guilty to a reduced charge, then the court should set aside the conviction, provided defendant agrees to plead guilty to the reduced charge which would have probably been offered; receive defendant's guilty plea to that charge; and enter sentence accordingly.

Defendant's sentence is vacated and the case remanded for further proceedings consistent with this opinion.

BILLINGS, J., concurs.

BENCH, Judge (concurring and dissenting):

I concur with the discussion of prosecutorial misconduct under rule 4.2 of the Utah Rules of Professional Conduct, but dissent from the balance of the main opinion.

My colleagues base their reversal on a violation of defendant's sixth amendment right to counsel. They go on to conclude that defendant was prejudiced because he might have obtained a better bargain. In

---

**8.** In *State v. Knight*, 734 P.2d 913 (Utah 1987), the Utah Supreme Court reiterated its position that "claims alleging ineffective assistance of counsel [are properly rejected] when a defendant has rejected a plea bargain and has retained his or her right to a fair trial." *Id.* at 919 n. 7. In the instant case, we do not face the problem of a represented client rejecting an offered bargain, proceeding to trial, and then claiming he did not get good advice from counsel in connection with the offered plea bargain. On the contrary, we confront a situation where a client who had counsel entered into a pretrial bargain without the advice of his counsel and having never waived his right to counsel, all as a result of improper prosecutorial conduct in derogation of his Sixth Amendment right to counsel. Such a scenario is unlike the one referred to in *Knight* and is not, by its nature, one which can be cured by a subsequent trial, no matter how fair, if the bargain itself was less advantageous than it would have been had defense counsel been involved.

the course of this analysis, they assert that the trial court made no specific finding whether defendant validly waived his right to counsel. They then conclude as a matter of law that the State did not, and could not, demonstrate that defendant validly waived that right. I cannot agree with this analysis.

"The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Although waiver is not to be presumed from a silent record, *see State v. Hamilton,* 732 P.2d 505, 507 (Utah 1986), the record in this case is far from silent. On June 8, 1988, an evidentiary hearing was conducted by the court in response to defendant's motions to dismiss and to recuse the office of the county attorney. The basis for those motions essentially was that defendant had been deprived of his right to counsel.

Four witnesses testified for the State. It is clear from that testimony that defendant, on his own initiative, contacted the police after he had been jailed for aggravated robbery. Defendant told the police that he could provide information on a pending criminal case. In exchange, defendant sought to avoid going back to prison and asked if he could be sentenced to time in a county jail or halfway house. At no time did he ever propose to enter a guilty plea. All four of the State's witnesses testified that defendant had not requested consultation with his attorney. They also denied having discouraged him from doing so. The sole witness to refute this testimony was defendant himself.

The record further indicates that the county attorney agreed to make certain sentencing recommendations based on the information provided by defendant. Prior to the delivery to defendant of the written agreement, however, defendant made a court appearance with his attorney. By his own admission, defendant met privately with his attorney after court and said *nothing* about the pending agreement. He also freely admitted that his jailers made no restriction on his use of the telephone. Further testimony by defendant established that his background and experience included numerous other arrests. When viewed with the *Miranda* warnings given in connection with this arrest, it is clear that defendant was well aware of his right to an attorney.

Following the hearing, the court denied defendant's motions concluding, "Court *finds* no violation of the 6th amendment." (Emphasis added.)[1] In view of the quantity and nature of the evidence taken, the court implicitly, if not explicitly, determined that the State had carried its burden and that defendant had made a valid waiver of the right to counsel. *See Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) (the State has the burden to show a knowing and voluntary waiver). My colleagues, however, now determine that the State did not meet its burden and conclude, despite the evidence and the trial court's determination, that defendant's testimony was more credible.

"It is not our function to determine the credibility of conflicting evidence or the reasonable inferences to be drawn therefrom." *State v. Wright,* 744 P.2d 315, 317 (Utah Ct.App.1987) (quoting *State v. Bagley,* 681 P.2d 1242, 1244 (Utah 1984)). Rather, the trial court must record its findings with respect to factual issues, *see* Utah R.Crim.P. 12(c) (Utah Code Ann. § 77–35–12(c)), which "should not be upset unless clearly erroneous." *State v. Menke,* 787 P.2d 537, 539 (Utah Ct.App.1990); *see also United States v. Carrasco,* 887 F.2d 794, 819 (7th Cir.1989) (finding of sixth

---

1. This determination was contained in a minute entry. The court requested the preparation of findings of fact and conclusions of law, but such findings are not included in the record. "While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson,* 304 U.S. at 465, 58 S.Ct. at 1023.

amendment waiver subject to clearly erroneous standard); *but see Norman v. Ducharme*, 871 F.2d 1483, 1486 (9th Cir.1989) (the validity of a waiver is a mixed question of law and fact). Only when the findings "are against the clear weight of the evidence or ... the appellate court reaches a definite and firm conviction that a mistake has been made" is clear error indicated. *Menke*, 787 P.2d at 539; *see also Carrasco*, 887 F.2d at 819 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). I am not ready to find clear error in this case. *See State v. Ruth*, 102 Idaho 638, 637 P.2d 415, 419 (1981) (right clearly waived).

The United States Supreme Court has delineated the recognition of a valid waiver of counsel in cases such as this—by "pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers of proceeding without counsel." *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261 (1988). Here, the majority remands the case to determine what "bargain defendant would likely have struck had competent defense counsel been a key participant in the negotiations." The record testimony is clear, however, that defendant received all the consideration the county attorney was willing to give. The deputy county attorney testified that defendant's case

> had as much evidence that directly pointed toward this one defendant [as] any of the cases that I had handled. I couldn't see any reason why it should be negotiated. I didn't feel it was my responsibility to the people of this community and to fulfill my job requirements to negotiate something as serious as an aggravated robbery to something less, simply to avoid trying it.

The county attorney testified that defendant initially asked if, in exchange for his cooperation, the charge against him could be reduced or dismissed. The county attorney's response was "absolutely not." Other testimony establishes that the State considered both the merits of the case against defendant and the case in which defendant

agreed to cooperate and believed the cases to be strong enough that greater concessions to defendant simply were not necessary or contemplated.

A pragmatic assessment by the trial judge obviously resulted in the conclusion that counsel would not have obtained any better deal, and that defendant surely made "his choice [with his] eyes open." *Patterson*, 108 S.Ct. at 2395 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). In accordance with my conclusion, I also do not perceive any value in the main opinion's creative remedy for defendant's "prejudice."

I would therefore affirm the judgment of the trial court.