**STATE of Utah, Plaintiff and Appellee,**

v.

**Onan FORD, Defendant and Appellant.**

**No. 900645–CA.**

Court of Appeals of Utah.

Oct. 8, 1991.

Robert L. Froerer, Ogden, for defendant and appellant.

R. Paul Van Dam and Charlene Barlow, Salt Lake City, for plaintiff and appellee.

_____

where trial court denied probation based on the facts presented including State's recommenda-   tion for probation).

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BENCH, Presiding Judge:

Onan Ford appeals the reimposition of his sentence by the trial court following an evidentiary hearing ordered on remand. The purpose of the hearing was to inquire as to whether he suffered any prejudice by bargaining with the State without retained counsel. Ford challenges the factual findings of the court at that hearing. We affirm.

## I. FACTS

This matter first came before this court on appeal in *State v. Ford*, 793 P.2d 397 (Utah App.1990). Ford had appealed his conviction and sentence for aggravated robbery, a first degree felony. The grounds for the appeal centered on the impropriety of direct negotiations between the State and Ford without the inclusion of his retained counsel while trial was pending against him. The facts surrounding those negotiations are given in abbreviated form as follows.

Ford was in jail awaiting trial when he contacted police to make a deal in the case against him. Ford informed police that his cellmate, Jeff Scott, had admitted involvement in a separate and unrelated jewelry theft that was also set for trial. Police relayed the information to the Weber County Attorney, but the prosecutors felt they already had a strong case against Scott without the information, and were not inclined to reduce the charge against Ford through plea negotiations or sentencing concessions. To increase his chances of a deal, Ford volunteered additional information about Scott. Ford told police that Scott had smuggled the stolen property out of the jail through an attorney.

Apparently, the tip about the possible involvement of an attorney was sufficiently intriguing that a "sting operation" was set up to recover the stolen jewelry. As part of this plan, Ford agreed to let police wire him with a microphone transmitter to record a conversation arranged between Scott and the attorney. In exchange for Ford's involvement, the prosecutors agreed to: (1) take no position on Ford's sentence; (2) take no position on enhancement of the sentence for use of the firearm; (3) send a letter to the Board of Pardons describing Ford's assistance; and, (4) do everything in their power to ensure that Ford would serve his sentence in a location other than the Utah State Prison. Ford's negotiations with the State were made without the knowledge or consent of Ford's attorney.

A bar complaint was ultimately filed against the prosecutors for misconduct, but even the threat of that measure failed to produce any further concessions for Ford. Ford was ultimately convicted of the crime charged in a bench trial, and was sentenced to serve a period of imprisonment from five years to life, without any enhancement for use of the firearm.

Ford appealed and, because of the unusual nature of the case, this court fashioned an "unusual remedy": the case was remanded to the trial court for an evidentiary hearing on whether and to what extent Ford was prejudiced by bargaining directly with the State. *Ford*, 793 P.2d at 405. This court stated that the hearing would necessarily involve an evaluation of Ford's role as an agent for the State in the Scott case. This court suggested that testimony from experienced defense attorneys and prosecutors with no direct stake in the outcome would be helpful. *Id.*

On remand, the parties stipulated to the facts available to the State in the Scott case prior to Ford's involvement.[1] The tri-

---

1. According to the stipulation, the evidence available to the State prior to Ford's involvement consisted of the following:

   A. On 12/6/87 Jeff Scott was stopped in a vehicle containing the stolen property in Barstow, California, traveling 90 miles per hour.

   B. The property had Farr's [J]ewelry engraved inside some of the jewelry. All jewelry was identified as coming from Farr's.

   C. Scott was wearing tennis shoes that matched those at the crime scene.

al court conducted the evidentiary hearing as directed, and found no prejudice based on the evidence presented. The trial court then reimposed the same sentence.

## II. STANDARD OF REVIEW

■ The factual findings of a trial court will not be disturbed on appeal unless clearly erroneous. Utah R.Civ.P. 52(a);[2] *State v. Arroyo*, 796 P.2d 684, 687 (Utah 1990). Findings of fact are clearly erroneous if they are "against the clear weight of evidence, or the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

## III. FINDINGS OF FACT

Ford urges this court to review his actions and the value of his assistance in participating in the sting operation. However, we do not assess facts de novo on appeal. *Walker*, 743 P.2d at 193 (quoting Wright & Miller, *Federal Practice and Procedure*, § 2585 (1971)). The narrow issue now before this court, therefore, is whether the factual findings of the trial at the evidentiary hearing were clearly erroneous.

■ In this case, the trial court found that the State had a "cold case" against Scott without any of the information provided by Ford. The trial court found that the evidence against Scott was "overwhelming" and that it would have been "absurd" for the State to reduce the charges against Ford when all he offered was information that the State did not need. The court reasoned that it could have made its findings on the stipulated facts alone and, even if Ford's attorney had

been consulted about the sting operation, the likely effect on the Scott case would have been the same. The trial court concluded that Ford's attorney would have likely advised Ford to not get involved in the "sting" without getting some kind of significant concession in exchange. However, the trial court also found that it would have made "no sense" for the State to make any concessions when the State already had a strong case against Scott, and Ford had a criminal record for aggravated robbery.

Ford also argues that this court should not believe the State's witnesses who took the position that no reduction in either the charge or sentence would have occurred because their testimonies conflicted with the testimonies of attorneys called as defense witnesses who said reductions frequently do occur. In determining whether a finding is clearly erroneous, due regard is given to the trial court to evaluate the credibility of witnesses since it is not our function to "determine conflicting evidence or the reasonable inferences drawn therefrom." *State v. Wright*, 744 P.2d 315, 317 (Utah App.1987) (quoting *State v. Bagley*, 681 P.2d 1242, 1244 (Utah 1984)).

In light of the foregoing, we conclude that the findings of fact by the trial court are not clearly erroneous because they were not against the clear weight of evidence, and we are not convinced that a mistake was made by the trial court. Accordingly, we affirm the factual findings of the trial court.

## IV. SENTENCING

■ In *Ford*, this court directed that "if the court concludes that defendant would realistically have received no better deal

---

D. Scott told Detective Lucas, "I'll talk maybe if you'll let me plead guilty to 0–5 year sentence."

E. Scott gave evasive answers to the California Highway Patrol. Gave a false name, etc., when stopped.

F. Shawn Bell, Scott's girlfriend, hear[d] Scott talk about how he was:
  a. Tired from working hard all night.
  b. That his fingernails were dirty.
  c. Told Sattiewhite that he shouldn't have gone over there and set off the alarm.

  d. Sattiewhite asked, "How much money do you think we got?" Jeff started saying numbers, 50 thousand, 30 thousand.

  e. Told Sattiewhite [sic] plenty of money to pay off bills.

  f. Shawn Bell so testified.

G. Sattiewhite was going to testify for the State. He was Scott's accomplice and actually entered Farr's with Scott.

**2.** Rule 52 applies to criminal actions under Utah Rules of Civil Procedure 81(e).

with counsel's involvement than he obtained by himself, the sentence previously entered may simply be reimposed." 793 P.2d at 405. Sentencing is a prerogative of the trial court and will not be disturbed on appeal unless the sentence "exceeds that prescribed by law or unless the trial court has abused its discretion." *State v. Shelby*, 728 P.2d 987, 988 (Utah 1986).

The sentence imposed on Ford does not exceed that prescribed by law. Ford presented no argument on how the trial court abused its discretion other than his challenge to the factual findings, which we reject since they were not clearly erroneous.

### V. CONCLUSION

The conviction and sentence are affirmed.

BILLINGS, J., concurs.

ORME, J., concurs in the result.